# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 23, 2017

Plaintiff-Appellee,

v

No. 332404
Grand Traverse Circuit Court
LC No. 2015-012049-FH

FREDERICK MORRIS WALDROUP,

Defendant-Appellant.

Before: SERVITTO, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Defendant pleaded guilty to attempted possession of a dangerous weapon by a prisoner, MCL 800.283(4); MCL 750.92. The trial court sentenced him to 15 to 30 months' imprisonment. He now appeals by leave granted[1] claiming that the sentencing guidelines were not properly scored and that he is entitled to resentencing. We reject this claim and affirm.

Defendant was initially charged with prisoner in possession of a weapon, MCL 800.283(4), and was supplemented as a third offense habitual offender, MCL 769.11. However, he agreed to plead guilty to the offense of attempted possession of a firearm by a prisoner in return for the dismissal of the original charge and the supplementation. Defendant committed the subject offense while in prison serving a sentence for a second-degree home invasion conviction. He admitted at the plea-taking that he possessed a homemade knife, which he described as a 5 to 6-inch piece of metal wrapped in cloth. Defendant was informed, and acknowledged understanding, that the sentence imposed for this conviction would be consecutive to the one he was already serving. At the plea-taking, defendant's counsel stated that the sentencing guidelines had been calculated at 0 to 17 months, but at the sentencing the trial court informed defendant that the guidelines range was 5 to 17 months; points had been added for a threat to security and this had resulted in an increase to 5 to 17 months.

On appeal, defendant claims that the trial court miss-scored Offense Variables (OV) 9 and OV 19, that this resulted in an incorrect range of 5 to 17 months, and that the minimum

---

[1] *People v Waldroup*, unpublished order of the Court of Appeals, entered June 8, 2016 (Docket No. 332404).

-1-

sentence of 15 months constituted a departure from the properly scored guidelines range. Defendant further claims that the sentence was a departure because the sentencing guidelines cell under which he should have been sentenced provided for an intermediate sanction, and also that the sentence violated the principle of proportionality. We disagree.

The sentencing court calculated the guidelines based on the Sentencing Grid for Class H offenses.[2] The Prior Record Variable (PRV) score (which no one challenges) was calculated at 107 points, or PRV Level F. The OV score was calculated at 55 points, or OV Level III. Applying the PRV and OV scores on the Class H grid results in an F-III level and the suggested minimum sentencing range of 5 to 17 months. Defendant is entitled to be resentenced if the original sentence is based on an incorrectly calculated sentencing guidelines range. *People v Francisco*, 474 Mich 82, 92; 711 NW2d 44 (2006). As this Court stated in *People v Sours*, 315 Mich App 346, 351; 890 NW2d 401 (2016):

> There is simply no way of knowing what sentence the trial court would have imposed in light of the correctly calculated guidelines. See [*Francisco*, 474 Mich at 91.] "Thus, requiring resentencing in such circumstances not only respects the defendant's right to be sentenced on the basis of the law, but it also respects the trial court's interest in having defendant serve the sentence that it truly intends." *Id*. at 92.

With respect to the scoring of the sentencing guidelines, defendant has misstated or misinterpreted the record. Defendant was originally charged with being a prisoner in possession of a weapon. MCL 800.283(4). This statute provides, in relevant part:

> (4) Unless authorized by the chief administrator of the correctional facility, a prisoner shall not have in his or her possession or under his or her control a weapon or other implement which may be used to injure a prisoner or other person, or to assist a prisoner to escape from imprisonment.

At the plea-taking, defendant admitted to possessing the shank. At sentencing, he agreed with his counsel's statements that he fashioned "an instrument to protect himself" after being threatened by members of the Aryan Brotherhood, and that when "he was cornered up against a fence or somewhere . . . he showed his shank to the Aryan Brothers, who then backed off, but the guard saw that." The trial court asked defendant if he had anything to add and he responded, "No. . . . . That's – that's – yeah. That's basically it. Hit the nail right on the head." In other words, defendant agreed with his counsel's description of what occurred in prison and thus *admitted those facts*. Defendant now claims that he did not display the shank and that it was

---

[2] MCL 800.283(4) is a Class E offense, MCL 777.17g. But, because defendant was permitted to plead guilty to an attempt (MCL 750.92) to possess a weapon, his applicable sentencing grid was for a Class H offense. MCL 777.19(3)(b); *People v Lucey*, 287 Mich App 267, 269 n 3; 787 NW2d 133 (2010).

only discovered during a strip search after the fight was broken up. These claims appear to be derived from a description of the offense in the presentence report (PSIR). However, the PSIR states:

> On 12/18/2014 Mr. Waldroup was involved in a fight with another inmate, . . . . Mr. Waldroup indicated the two had a disagreement and "had words" which resulted in the fight. Per standard procedure Mr. Waldroup was strip searched after the fight. During the search a 5 to 6 inch knife fell out of Mr. Waldroup's undershorts. The knife consisted of a sharpened piece of metal with cloth wrapped around one end as a handle. No contraband was discovered on [the other inmate, who] alleged that Mr. Waldroup had flashed the weapon as a threat prior to their fight. Concerned for his own safety [the other inmate] stated that he punched and initiated the fight with Mr. Waldroup in self-defense.

Thus, contrary to defendant's assertion on appeal, even the PSIR indicates that defendant displayed the shank and that it was not simply hidden in his undershorts.

OV 9 provides that 25 points should be scored if 10 or more victims "were placed in danger of physical injury or death." MCL 777.39. Presumably 25 points were score based on the admission that defendant possessed a shank in prison and the fact that the entire prison population – inmates and guards – was therefore placed in danger of physical injury or death by defendant's possession of a weapon. In *People v Ambrose*, ___ Mich App ___, ___; ___ NW2d ___ (2016), slip op at 4, this Court considered whether a fetus was a victim for the purposes of scoring OV 9. This Court stated:

> MCL 777.39(1)(c) does not define "victim." However, MCL 777.39(2)(a) does instruct courts to score each person who was placed in danger of physical injury or loss of life or property as a victim. Notably, MCL 777.39(2)(a) contains no words limiting the definition of "victim" to persons who were placed in danger of physical injury or loss of life or property. Rather, it simply states that such persons *must* be counted as victims. Thus, we conclude that there is no basis to conclude that the word "victim" as used in MCL 777.39 must be defined only to include persons who suffered danger or physical injury or loss of life. [Emphasis in original.]

Using this reasoning as guidance, we conclude that the trial court properly scored OV 9 at 25 points for "10 or more victims [being] placed in danger of physical injury or death." OV 9 does not place any limitation – of either time or proximity – upon who may be endangered by a defendant's possession of a weapon. Defendant is attempting to impose such limitations by suggesting that he was engaged in a confrontation with only one person at the time the shank was discovered and therefore could not have endangered 10 or more victims. But, as this Court

concluded in *Ambrose*, the statute does not support such limitations.[3]  Defendant was in a prison. By his own admission, he possessed a stabbing weapon to protect himself from any of the other prisoners who might seek to abuse him because of his small stature.  In order to provide this protection, defendant apparently carried the shank with him at all times – otherwise it would not have been much use as protection.  All of the prisoners or guards with whom defendant interacted were therefore potential victims.[4]

In *People v Gratsch*, 299 Mich App 604; 831 NW2d 462, vacated in part on other grounds (2013), this Court considered the scoring of OV 9 in the context of a defendant found guilty of being a prisoner in possession of a weapon.  This Court concluded:

> In this case, the cooperating jail inmate testified that while defendant had the needle he had constructed, he stated, "I should stab her [a corrections officer] in the neck."  In addition, the inmate testified that a few days earlier, defendant informed him that "if I told anybody about it [the needle] he would hurt me." From this testimony, the trial court had an adequate factual basis to conclude that while defendant possessed the needle in the jail, at least two victims were placed in danger of physical injury.  MCL 777.39(1)(c).  Given that at least two victims were placed in danger of physical injury because of defendant's possession of the needle, the trial court properly scored OV 9 at 10 points.  It is irrelevant that

---

[3] In *People v Sargent*, 481 Mich 346; 750 NW2d 161 (2008), *People v McGraw*, 484 Mich 120; 771 NW2d 655 (2009), and *People v Thompson*, 314 Mich App 703; 887 NW2d 650 (2016), our Supreme Court and this Court, respectively, decided that OV 9 could not be scored using uncharged acts that did not take place during the criminal transaction that constituted the sentencing offense, and that "a defendant's conduct after an offense is completed does not relate back to the sentencing offense for purposes of scoring offense variables unless a variable specifically instructs otherwise." *Thompson*, 314 Mich App at 710.  In this case, defendant's fact admissions established support for the original charged offense of "possession of a weapon by a prisoner" – albeit, for purposes of the plea and sentence, it was treated as an attempt.  This was an ongoing offense that occurred throughout the time defendant possessed the weapon – not just at the time another prisoner or a guard observed the shank; at any time during defendant's possession of the weapon all the prisoners and guards with whom he came in contact were placed in danger of possible physical injury or death.  By way of contrast, in *McGraw* and *Thompson*, the defendants were sentenced for breaking and entering convictions, but OV 9 was scored based on the defendants' conduct in fleeing and eluding police *after* the breaking and enterings were completed.  *McGraw*, 484 Mich at 122-123; *Thompson*, 314 Mich App at 710.

[4] In *People v Morson*, 471 Mich 248, 262; 685 NW2d 203 (2004), our Supreme Court upheld the scoring of OV 9 where, although only one person was robbed, a person standing nearby who responded to the calls for help "was 'placed in danger of injury or loss of life' during the armed robbery."  Robbery is a continuing offense, MCL 750.530(2); *People v Smith-Anthony*, 494 Mich 669, 686; 837 NW2d 415 (2013), and is thus more akin to the possession of a weapon charge in this case than it is to a breaking and entering or some other offense that is completed as soon as the primary action (e.g., breaking and entry) has occurred.

neither the inmate nor the correction officer was actually harmed. A person may be a victim under OV 9 even if he or she did not suffer actual harm; a close proximity to a physically threatening situation may suffice to count the person as a victim. See *People v Morson*, 471 Mich 248, 262; 685 NW2d 203 (2004). Accordingly, the trial court did not abuse its discretion by assessing 10 points for OV 9. [*Gratsch*, 299 Mich App at 623-624.]

As in this case, the defendant in *Gratsch* did not actually harm anyone with the weapon. Furthermore, the two victims who were counted in *Gratsch* – one a guard and one a prisoner – were considered victims based on the possibility that the defendant could have harmed them during the time he possessed the weapon on two different days. This Court therefore concludes that the trial court's scoring of OV 9 was supported by a preponderance of the evidence. *Ambrose*, ___ Mich App at ___; slip op p 2; *Sours*, 315 Mich App at 348.

OV 19 provides that 25 points are to be scored if "[t]he offender by his or her conduct threatened the security of a penal institution or court." MCL 777.49(a). Defendant's possession of a stabbing weapon threatened the security of a penal institution; it is for this very reason that the Legislature penalized possession of weapons in a prison (unless the possession is authorized by the warden). Defendant argues that the shank was not "produced" until it was discovered during the strip search and therefore it was not a threat to the security of the prison. Defendant does not cite any authority in support of his assertion that the weapon must be produced. Defendant may not simply announce his position and leave it to this Court to find authority to sustain or reject his claim. *People v Konopka*, 309 Mich App 345, 366; 869 NW2d 651 (2015).

Regardless, according to defense counsel's statements at the sentencing, the shank *was* displayed to gang members who were confronting defendant and this display was also seen by a guard at that time. Defendant agreed with his counsel's statements and therefore *admitted* those facts. The sentencing guidelines could properly be scored based on defendant's admissions. *People v Lockridge*, 498 Mich 358, 391-392; 870 NW2d 502 (2015). Moreover, the PSIR indicates that the shank was displayed to an inmate who then got in a fight with defendant. Therefore, even the "facts" relied on by defendant do not support his assertion that the shank was not displayed. Finally, there is nothing in the language of OV 19 that requires that a weapon be displayed in order to constitute a threat to the security of a penal institution. MCL 777.49. Logic dictates that any weapon possessed by a prisoner in a penal institution constitutes a threat to the security of the institution, and a concealed weapon can pose more of a threat because if neither inmates nor guards know of the weapon's existence, they would be unable to take any steps to protect themselves from a surprise attack. As this Court stated in *People v Osuna*, 174 Mich App 530, 532; 436 NW2d 405 (1988), citing *Acrey v Dep't of Corrections*, 152 Mich App 554, 559; 394 NW2d 415 (1986): "[W]ithin the prison setting, the element which transforms an unauthorized article into a weapon is its *potential to cause injury*, not the inmate's subjective intent." (Emphasis supplied).

According to *Lockridge*, 498 Mich at 394-395, where the sentencing court has scored the sentencing guidelines based on facts admitted by the defendant, and the defendant was sentenced within the properly calculated sentencing range, the defendant has suffered no prejudice and is not entitled to any relief. Defendant's sentencing guidelines were scored on the basis of his

factual admissions and he was sentenced within the minimum sentence range suggested by the properly scored guidelines. Therefore, defendant is not entitled to any relief.

Defendant contends that his sentence is a departure from the sentencing guidelines and that his resultant sentence is not reasonable. *Lockridge* requires that departure sentences must be reasonable. 498 Mich at 365, 392. This Court has interpreted the reasonableness requirement to require a proportionality analysis pursuant to *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990). *People v Steanhouse*, 313 Mich App 1, 47-48; 880 NW2d 297 (2015). However, the triggering factor for a reasonableness/proportionality review is that the sentence represents a *departure* from the correctly scored sentencing guidelines range, and in this case the guidelines were correctly scored and there is no departure. Therefore, defendant is not entitled to a proportionality review.

Even if we were to decide to review defendant's proportionality argument, we would still affirm defendant's sentence. Defendant claims that his sentence is not proportionate because the suggested minimum sentence range is an intermediate sanction cell and the trial court did not give substantial and compelling reasons to justify a prison sentence. MCL 769.34(4)(a); *People v Harper*, 479 Mich 599, 605-606; 739 NW2d 523 (2007). Defendant further states:

> *Lockridge, supra* did not address cases where the sentencing range calls for a jail sentencing. The inference is that guidelines are still mandatory under that case scenario. The trial court must then still find substantial and compelling reasons to depart upward. There were no reasons to depart in the case before the Court, the trial court gave none so Mr. Waldroup should be entitled to re-sentencing pursuant to *People v Babcock*, 469 Mich 247, 258; 666 NW2d 231 (2003) and *People v Kimble*, 470 Mich 305, 310; 684 NW2d 669 (2004).

However, our Supreme Court in *Lockridge* actually did abandon the "substantial-and-compelling-sentence-justification" requirement. 498 Mich at 391. While the *Lockridge* decision specifically applied this judicial rewriting only to MCL 769.34(2) and MCL 769.34(3), the Supreme Court noted that "[t]o the extent that any part of MCL 769.34 or another statute refers to use of the sentencing guidelines as mandatory or refers to departures from the guidelines, that part or statute is also severed or struck down as necessary." 498 Mich at 365 n 1. MCL 769.34(4) is the portion of the statute that addresses intermediate sanction cells, and so, consistent with the directive from *Lockridge*, the part of MCL 769.34(4)(a) that mandates that a court impose an intermediate sanction cell "unless the court states on the record a substantial and compelling reason to sentence the individual to the jurisdiction of the department of corrections" is severed from the statute. Therefore, the trial court was not required to give substantial and compelling reasons to justify its sentencing decision. This Court has specifically applied the *Lockridge* directive to intermediate sanction cells. *People v Schrauben*, 314 Mich App 181, 194; 886 NW2d 173 (2016) ("However, our Supreme Court in *Lockridge* specifically stated that any part of MCL 769.34 that refers to the guidelines as mandatory or refers to departures from the guidelines is severed or struck down. *Id.* at 365 n 1.").

Moreover, defendant's sentence was "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Milbourn*, 435 Mich at 636.

-6-

Defendant was only 22 years old, but he had managed to accumulate seven felony convictions. He also had seven misconducts while incarcerated; he had committed crimes while on Holmes Youthful Trainee status; and he had committed crimes while on probation. He was given a break by being allowed to plead to an attempt offense even though his admissions established that he had committed the charged offense. Finally, he committed the offense while incarcerated in prison and therefore the sentence in this case had to be consecutive to the sentence he was already serving. There was simply no way that a jail sentence would have been "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*.

Affirmed.


/s/ Deborah A. Servitto
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood