# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 14, 2018

Plaintiff-Appellee,

v

No. 334930
Livingston Circuit Court
LC No. 16-023332-FH

RAYMOND T.J. TRESTIK,

Defendant-Appellant.

Before: CAMERON, P.J., and METER and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right his conviction by a jury of aggravated stalking, MCL 750.411i, for which the trial court sentenced him to 40 to 60 months' imprisonment. We affirm.

The prosecution presented evidence that defendant and the complaining witness had a romantic relationship while attending college in Arizona between 2006 and 2009, throughout which defendant engaged in controlling and assaultive conduct against the complainant, including by violating a personal protection order (PPO). The prosecution additionally offered evidence to show that defendant resumed his threatening or harassing behavior in 2015, including by twice appearing at the complainant's home in Brighton.

Defendant argues that he was denied a fair trial by the trial court's refusal to allow appointed counsel to withdraw from the case, and by counsel's ineffective performance. Defendant also challenges his sentence on the grounds that the trial court misscored two of the offense variables (OVs) under the sentencing guidelines, and imposed a minimum sentence that violates the principle of proportionality.

## I. ASSISTANCE OF COUNSEL

### A. MOTION TO WITHDRAW

At the beginning of trial, defendant's appointed attorney expressed some hesitation over continuing her representation of defendant, on the ground that problems communicating with defendant compromised her ability to perform competently. Defendant also complained of communication problems in the attorney-client relationship. The trial court assured defendant that his appointed attorney was a good one, advised him that he had put forward no valid reason for a change in appointed counsel, and insisted that defendant proceed with appointed counsel

-1-

either representing him or acting as his standby counsel. When defense counsel continued to express reservations, the court allowed defendant and his attorney to confer off the record. When the proceedings resumed on the record, the court elicited from defendant his unequivocal preference to continue with appointed counsel. Defendant *repeatedly* stated that he wanted to proceed with appointed counsel.

Defendant now argues that the trial court failed to inquire reasonably into the problems with the attorney-client relationship or otherwise consider defendant's need for a different attorney. We disagree. "The decision regarding substitution of counsel is within the sound discretion of the trial court and will not be upset on appeal absent a showing of an abuse of that discretion." *People v Mack*, 190 Mich App 7, 14; 475 NW2d 830 (1991).

> An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced. Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. Good cause exists where a legitimate difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic. [*Id.* (citations omitted).]

Neither defendant nor appointed counsel identified any legitimate difference of opinion concerning a fundamental trial tactic. Defendant faults the trial court for not taking full advantage of defense counsel's offer of proof concerning why she felt that her ability to present an effective defense was compromised. However, the court was merely showing a proper reluctance to involve itself in privileged matters concerning the attorney-client relationship, including the development of trial strategy. All innuendoes from defendant and appointed counsel were that communication between them was the real issue, with no indication that serious disagreements concerning fundamental trial tactics would arise and persist after improved communications. That those concerns were successfully addressed is apparent from defendant's unequivocally-expressed desire, following a conference with counsel, to proceed with her as his attorney.

Moreover, the trial court was asked to concern itself about defendant's problems with his appointed attorney only as trial was about to begin. Defendant gave no indication at trial, and does not suggest on appeal, that he had a new attorney in view, let alone one who was ready to take over the case with minimal delay. Obviously, allowing for substitution of counsel when the suggestion was brought to the trial court's attention would have required delaying trial for appointment of a new attorney, and for that new attorney and defendant to build a defense from scratch. Given the lack of more compelling reasons than the personality or communication problems defendant and his appointed attorney put on the record in this case, the trial court's determination to proceed to trial, with appointed counsel acting either as defense attorney or, at

defendant's election, as standby counsel, was a proper refusal to disrupt the judicial process. See *Mack*, 190 Mich App at 14.[1]

## B. COUNSEL'S PERFORMANCE

Defendant argues that his trial attorney was ineffective for failing to request an independent criminal-responsibility examination, failing to object to the presentation of allegedly inadmissible character evidence, and allegedly failing to cross-examine the complainant effectively over her allegations of nonconsensual contacts. We disagree.

"In reviewing a defendant's claim of ineffective assistance of counsel, the reviewing court is to determine (1) whether counsel's performance was objectively unreasonable and (2) whether the defendant was prejudiced by counsel's defective performance." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). Regarding the latter, the defendant must show that the result of the proceeding was fundamentally unfair or unreliable, and that but for counsel's poor performance the result would have been different. *People v Messenger*, 221 Mich App 171, 181; 561 NW2d 463 (1997). To obtain relief, a defendant raising a claim of ineffective assistance of counsel must overcome a strong presumption that counsel's tactics were matters of sound trial strategy. *People v Henry*, 239 Mich App 140, 146; 607 NW2d 767 (1999).

### 1. INDEPENDENT CRIMINAL-RESPONSIBILITY EXAMINATION

Before trial, defense counsel successfully asked the trial court to order competency and criminal-responsibility examinations of defendant. A competency examination from the Center for Forensic Psychiatry of the Department of Health and Human Services ensued; the conclusion was that defendant was competent to stand trial. A criminal-responsibility report followed.[2]

Defendant asserts that the lack of an independent examination deprived him of the option of offering an insanity defense. We do not find this argument persuasive. Counsel's decisions concerning the choice of witnesses or theories to present are presumed to be exercises of sound trial strategy. *People v Julian*, 171 Mich App 153, 158-159; 429 NW2d 615 (1988). To overcome that presumption, a defendant must show that counsel's failure to prepare for trial resulted in counsel's remaining ignorant of substantially beneficial evidence that accordingly did

---

[1] To the extent that defendant appears to be arguing that the trial court should have adjourned the trial to give defense counsel more time to prepare, he has failed to present this argument properly by listing it in his statement of questions presented. *People v McMiller*, 202 Mich App 82, 83 n 1; 507 NW2d 812 (1993). Indeed, he mentions this adjournment issue as a sort of "afterthought" in his argument about substitution of counsel.

[2] Although this report is not in the lower-court record, the prosecutor filed with its brief on appeal a purported copy of the report, dated January 8, 2016, and addressed to defense counsel and the prosecuting attorney, with a date stamp indicating receipt on January 13, 2016. The evaluator concluded in this report that defendant "was not legally insane for the present alleged offenses."

not get presented. *People v Caballero*, 184 Mich App 636, 640, 642; 459 NW2d 80 (1990). A criminal defendant asserting the insanity defense bears the burden of proving that he or she "lacks substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law." MCL 768.21a(1). Importantly, "[m]ental illness or having an intellectual disability does not otherwise constitute a defense of legal insanity." *Id.*

Defendant admits on appeal that trial counsel requested both competency and responsibility evaluations and that both such evaluations were completed by Susan Tremonti, Ph.D. Defendant also admits that trial counsel had the unfavorable competency report in hand before trial. As stated in *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001), a defendant claiming ineffective assistance of counsel "bears the burden of establishing the factual predicate for his claim." Defendant has offered nothing—such as the results of such an independent examination—to show that an additional, independent criminal-responsibility examination would have somehow bolstered the defense. It appears that, given the difficulties of proving an inability to "appreciate the nature and quality or the wrongfulness" of stalking conduct or an inability to follow the requirements of the law, MCL 768.21a(1), defense counsel reasonably attempted to avoid conviction by trying to instill reasonable doubts concerning the complainant's allegations, rather than concede that defendant acted as the complainant described for purposes of trying to excuse that conduct with an insanity defense.[3] Defendant has failed to show any deficiency in defense counsel's performance from her not having sought an independent criminal-responsibility report.

## 2. CHARACTER EVIDENCE

MRE 404(b)(1) establishes that evidence of other bad acts is not admissible to prove a person's character in order to show behavior consistent with those other wrongs, but provides that such uncharged conduct may be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, scheme, plan or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material . . . ." See also *People v VanderVliet*, 444 Mich 52, 89; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).

In this case, the prosecution filed notice of its intent to present evidence of other bad acts attributed to defendant, see MRE 404(b)(2), which defense counsel opposed. The prosecution's notice indicated the desire to present evidence that "defendant engaged in violent, assaultive and intimidating acts . . . since 2007." At the hearing to decide the matter, the prosecuting attorney asserted that the case against defendant concerned "alleged behavior that continues from 2007 to

---

[3] To the extent that defendant very cursorily raises the issue of the potential for a verdict of "guilty but mentally ill" as discussed in MCL 768.36, we again note that nothing in record indicates that an additional, independent criminal-responsibility examination would have altered counsel's strategic choice to attempt to obtain an acquittal by arguing that the prosecution did not sufficiently prove its case.

2015 as dates of offense,"[4] and that the purported bad-acts evidence really was better characterized as "conduct that is actually part of the crime." The trial court ruled that the evidence in question would be admitted to prove the . . . six elements . . . [of] the . . . stalking charges," in obvious reference to the statutory definition of "stalking" as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411i(1)(e). The court thus accepted the prosecution's argument that the evidence of domestic abuse in Arizona related directly to the elements of the charged offense.

Defendant states that the complainant testified about "many instances in which [defendant] attempted to control her and who[m] she had contact with while they were in a dating relationship" and argues that the lack of defense objections to such testimony constituted ineffective assistance of counsel.

First, we disagree with defendant's insinuation that the evidence of controlling behavior was a deviation from the kinds of evidence the prosecution signaled its intention to present, in that the MRE 404(1)(b) notice mentioned the need to prove that the complainant felt "harassed" and "frightened," as well as "intimidated," and it takes little imagination to view the controlling behavior as harassing, intimidating, or fear-inducing, even if some of it took place in the context of a dating relationship or before the issuance of a restraining order. We further agree with the prosecution and court below that the evidence at issue in fact related directly to the elements of the crime, and thus was not prohibited by MRE 404(1)(a). See *People v Jackson*, 498 Mich 246, 271; 869 NW2d 253 (2015) ("courts have often considered whether evidence of an 'other act' is necessary to 'complete the story' of the charged offense when evaluating whether that evidence has been offered for a proper nonpropensity purpose under MRE 404(b)") (citations omitted). Because the prosecution was obliged to prove that defendant engaged in a "course of conduct" that caused the complainant to "feel terrorized, frightened, intimidated, threatened, harassed, or molested," MCL 750.411i(1)(e), the evidence of defendant's controlling behavior with which defendant takes issue joined the evidence of his other behavior in being relevant to prove the elements of the crime. The basis of defendant's appellate argument is, quite simply, erroneous. We find that no defense objection would have been successful, and thus the lack of such objections did not constitute ineffective assistance. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

### 3. CROSS-EXAMINATION

Defendant argues that defense counsel failed to cross-examine the complainant effectively over her accounts of unconsented-to contacts dating from her and defendant's time together in Arizona, or immediately after the complainant permanently returned to Michigan.

---

[4] These dates are recited on the information. The court instructed the jury that the prosecutor, to obtain a conviction, had to prove that the aggravated stalking took place between 2007 and 2015 in Arizona and in Livingston County, Michigan.

Defendant recites the complainant's account of him appearing at her classes, and elsewhere on the campus, and also sending her a card suggesting a meeting and an e-mail shortly after she returned to Michigan, and points out that defense counsel did not cross-examine her over her failure to report these situations and alleged violations of the Arizona restraining order to the appropriate court. Defendant suggests that counsel erred by failing to use the complainant's apparent disinclination to involve a court in those alleged violations to challenge her account of feeling terrorized, frightened, intimidated, threatened, harassed, or molested.

We note that the complainant did recount repeatedly notifying, or trying to notify, the police in response to some of defendant's conduct. We do not regard her not having *always* endeavored to involve such official authority, including the Arizona court, as a first resort as being of such significance that defense counsel should have insisted that the complainant explain those instances of inaction. Further, exploring why the complainant did not immediately notify the court when defendant violated the PPO, for purposes of trying to instill doubts about her having felt terrorized, frightened, intimidated, threatened, harassed, or molested, would have risked inducing her to elaborate on how she suffered those feelings even when she responded to those violations in other ways. This, in turn, might have caused the jury to look all the more sympathetically upon a witness whose testimony was already compelling. Defendant fails to bring to light any deficiency in defense counsel's performance in connection with her cross-examination of the complainant.

## II. SENTENCING

Defendant argues that he is entitled to resentencing on the grounds that the trial court erroneously assessed points for OVs 7 and 10 of the sentencing guidelines, and imposed a sentence departing from the guidelines recommendation in violation of the principle of proportionality.

A criminal defendant has a due process right to be sentenced on the basis of accurate information. *People v Hoyt*, 185 Mich App 531, 533; 462 NW2d 793 (1990). "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (citations omitted).

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017).

### A. OFFENSE VARIABLES

OV 7 addresses aggravated physical abuse. MCL 777.37. Over a defense objection, the trial court assessed 50 points for that variable, which is the amount MCL 777.37(1)(a) prescribes if the offender treated the victim "with sadism, torture, or excessive brutality or similarly

egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense . . . ." Defense counsel argued below that the sentencing offense was predicated on defendant's appearances at the complainant's home in 2015, and that the events taking place in Arizona several years earlier did not come to bear for this purpose. The prosecuting attorney retorted that "the dates of offense and what the defendant was convicted of was conduct from 2007 to 2015." The court adopted the latter position, explaining:

> I do find that the conduct of the defendant toward . . . [the complainant] was designed to substantially increase her fear or anxiety a victim suffered during the offense. And the . . . continuous stalking of this lady and his conduct toward her, putting her into fear, I think that his conduct showing up at her classroom; by her counseling; . . . by the bike rack; coming to her house, both in Arizona and here in Michigan, substantially increased her fear and anxiety that she suffered during the offense.

OV 7 should be scored in connection with only the conduct that occurred at the time of the sentencing offense. See *People v Thompson*, 314 Mich App 703, 711; 887 NW2d 650 (2016). Defendant argues that the sentencing offense only involved conduct from 2015 and that the 2015 conduct did not involve contact between defendant and the complainant but only involved defendant's coming to the complainant's father's home. He argues that evidence regarding conduct in earlier years could not be used to score OV 7.

We earlier rejected defendant's argument that the sentencing offense consisted exclusively of defendant's conduct upon following the complainant to Brighton in 2015, and agree with the prosecution and trial court that, because the sentencing offense involved stalking, the pertinent conduct extended to defendant's abusive acts from his and the complainant's years together in Arizona. Aggravated stalking necessarily involves "a willful course of conduct involving repeated or continuing harassment of another individual . . . ." MCL 750.411i(1)(e). A "course of conduct" is "a pattern of conduct composed of a series of . . . separate noncontinuous acts evidencing a continuity of purpose." MCL 750.411i(1)(a). Unlike the criminal sexual conduct at issue in *Thompson*, stalking by its nature is an offense consisting of multiple incidents taking place over time. Also, neither the stalking statute, MCL 750.411h, nor the aggravated stalking statute, MCL 750.411i, places any limitation on the pertinent timespan. For these reasons, the foundation of defendant's appellant argument is erroneous. The trial court correctly regarded the conduct pertinent to the scoring of OV 10 as including defendant's course of conduct directed at the complainant in the years before his 2015 appearance in Brighton, and thus correctly assessed 50 points for OV 7.

OV 10 concerns victim vulnerability. MCL 777.40. The trial court assessed 15 points for this variable, as MCL 777.40(1)(a) prescribes when the offender engaged in "predatory conduct," which is defined as "preoffense conduct directed at a victim for the primary purpose of victimization," MCL 777.40(3)(a). At sentencing, the prosecuting attorney argued for 15 points on the basis of the evidence that defendant had engaged in "controlling behavior where he limited [the complainant's] contact with her family, her friends," that he "was always questioning her as to whether or not she was having a sexual affair," that he "isolated her from all of her other social network," and that he engaged in repeated physical abuse when the complainant tried to leave him.

In challenging the assessment of points for OV 10, defendant repeats his tactic of characterizing the sentencing offense as consisting exclusively of his conduct upon arriving in Michigan in 2015. But the statute underlying OV 10 itself expressly refers to "preoffense conduct," thus opening up the inquiry to what went on between defendant and the complainant during their time together in Arizona.

Defendant otherwise argues that much of the abusive conduct that the complainant described from the years ahead of 2015 should not have been admitted in the first instance, hearkening to his allegations of ineffective assistance of counsel discussed above, and suggesting that the trial court should not have taken that information into account for purposes of sentencing. Because we concluded earlier that the complainant's accounts of defendant's misconduct dating from their Arizona years was admissible, we conclude here that defendant's sentencing argument relating to that information is without merit. Moreover, any prohibition on introducing the testimony in question for purposes of proving defendant's guilt at trial would not undermine the propriety of using such information for purposes of sentencing. Indeed, information relied upon at sentencing may come from several sources, including some that would not be admissible at trial, e.g., a presentence investigation report (PSIR). *People v Potrafka*, 140 Mich App 749, 751-752; 366 NW2d 35 (1985); see also MRE 1101(b)(3). Defendant fails to show that the trial court erred in assessing 15 points for OV 10.

## B. PROPORTIONALITY

The principle of proportionality in sentencing requires that sentences reflect the seriousness of the circumstances surrounding the offense and offender. *Steanhouse*, 500 Mich at 459-460, citing *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). A criminal sentence should reflect the criteria of disciplining and reforming the offender, protecting society, and deterring others from similar misconduct. *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972).

The recommended range for defendant's minimum sentence under the sentencing guidelines was 7 to 23 months. The trial court explained its decision to depart from that recommendation and impose a minimum sentence of 40 months as follows:

> [D]efendant has had several opportunities in other jurisdictions to . . . take guidance from other judges to leave [the complainant] alone and he has failed to heed that advice. With respect to protection of society, . . . the . . . people of Livingston County and the public at large need to be protected from an individual who will not heed a judge's warning or not conform his conduct to that of civilized society . . . . With respect to the potential for reformation . . . , a . . . sentence that exceeds guidelines is necessary . . . because it is clear . . . that the defendant has not only been told by a judge in Arizona to leave this woman alone, but that he was hospitalized for mental issues in the State of New York and . . . needs additional time to . . . be reformed so that he will conform his conduct to society. . . . Finally, and deterring others from committing like offenses, I think a message by . . . putting a sentence in this case which I think is consistent with the ends of the law and ends of justice will deter others from violating the judge's orders and violating the peace and dignity of a citizen that wishes to be left alone

. . . . [The complainant] has been the victim of aggravated stalking by this defendant going back to her college years forward, causing her to live in fear . . . and justly so because of the conduct of the defendant in continuing to . . . stalk her and make unwanted advances to her. She suffered in the past physical injuries due to this defendant . . . .

\* \* \*

Taking opportunities to confront this lady, like out at her classroom after you're told not to, . . . still meet her or try to meet her after she got out of class or at the bike rack or at a doctor's office, . . . is evidence of your continu[ation] of that conduct . . . . [C]hanging your address to her address here in Brighton is clearly strange and unlawful because you didn't live at that house. It was meant to add some kind of continued contact with her that she or her family did not want. So . . . coming to Michigan when you have no ties after you get out of a mental hospital to aggravate this woman or to confront her or her family, or to confront her, is simply not acceptable. It's unlawful and it shall not be repeated.

. . . I have not heard a word of . . . remorse . . . toward this lady or her family. . . . And in light of all of these reasons . . . , and the attempts that you have made to continue to stalk her, . . . [there is] the learned, thoughtful, and discerning authority to exceed the guidelines . . . .

Defendant concedes that "the trial court took the appropriate factors into consideration when addressing [defendant's] sentence," but argues that the trial court "likely would not have imposed a sentence with this upward departure had it not been apprised of inadmissible character evidence and uncontested testimonial evidence alleging stalking behavior." Thus, defendant is again relying on evidentiary challenges that we have already concluded are without merit.

Alternatively, defendant argues that the stalking statute and "the Sentencing Guidelines took all of this information into account and the circumstances of the case were adequately embodied within the variables to score the guidelines." With this unsupported cursory argument, however, defendant does not explain how the guidelines adequately took into account his lack of remorse, or the persistence or severity of the harassing and threatening behavior that preceded defendant's renewal of that campaign after the complainant thought she had found safety in Brighton. For these reasons, we reject defendant's challenge to his sentence. The sentence does not violate the principle of proportionality.[5]

---

[5] Further, there was no "cumulative error" requiring reversal in this case, as argued by defendant.

Affirmed.

/s/ Thomas C. Cameron
/s/ Patrick M. Meter
/s/ Stephen L. Borrello