# Court of Appeals, State of Michigan

## ORDER

People of MI v Jackie Lamont Thompson

Docket No. 318128

LC No. 13-009068-FC

Amy Ronayne Krause
Presiding Judge

William B. Murphy

Deborah A. Servitto
Judges

The Court orders that the August 25, 2015 opinion is hereby VACATED, and a new opinion is attached.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

MAR 29 2016
Date

Chief Clerk

| | |
|---|---|
| PEOPLE OF THE STATE OF MICHIGAN, | FOR PUBLICATION<br>March 29, 2016<br>9:00 a.m. |
| Plaintiff-Appellee, | |
| v | No. 318128<br>Clinton Circuit Court |
| JACKIE LAMONT THOMPSON, | LC No. 13-009068-FC |
| Defendant-Appellant. | |

Before: RONAYNE KRAUSE, P.J., and MURPHY and SERVITTO, JJ.

MURPHY, J.

Defendant pled no contest to one count of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(b)(*ii*) (sexual penetration and victim at least 13 but less than 16 years of age and related to the defendant). He was sentenced to a prison term of 15 to 40 years. Defendant appeals his sentence, challenging the scoring of offense variable (OV) 7, MCL 777.37. We reverse and remand for resentencing.

Defendant pleaded no contest to an act of digital-vaginal penetration involving his stepdaughter. At defendant's plea hearing, the court indicated that it would rely on the police report in support of the factual basis for the no-contest plea. The police report reflected that the victim was 13 years old at the time the report was prepared and that, according to the victim, defendant had been sexually abusing her at least twice a week for the last couple of years. The police report further provided that the victim had described multiple instances of digital-vaginal penetration, anal intercourse, and various acts of sexual contact.[1] In the police report, and in an attached written statement by the victim, reference was made to an incident in which defendant put a BB gun to the victim's head and threatened to kill her if she did not perform a sexual act. The police report also alluded to instances in which defendant pulled the victim's hair, struck her buttocks, threatened her life if she said anything about the sexual abuse, and hit her with a belt buckle, resulting in bruises on numerous occasions. In the victim's statement, she asserted that defendant had threatened her life

---

[1] The police report included a section regarding defendant's interview by police. The report stated, "Then in further talking to [defendant] and getting further signs of deception, . . . [h]e did admit that he did touch [the victim's] vaginal area and that his right hand middle finger did go inside her vagina . . . ."

"many times." Medical documents attached to the police report indicated that defendant once bit the victim on one of her breasts, leaving a scar. The police report noted that the last incident of sexual abuse occurred on February 24, 2013. Defendant pled no contest specifically with respect to the sexual assault that occurred on February 24, 2013, and not in regard to any of the prior sexual abuse.[2]

At defendant's sentencing, the prosecutor argued that OV 7 should be assessed at 50 points, which is the proper score when "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense."[3] MCL 777.37(1)(a). The only other potential score for OV 7 is zero points. MCL 777.37(1)(b). Defendant argued that a score of zero points was proper, given that defendant's conduct did not rise to the level that would justify a score of 50 points. The trial court, which now had the benefit of the presentence investigation report (PSIR) that essentially echoed the police report and the information discussed above, assessed 50 points for OV 7, ruling:

> [T]he Court takes note that the victim chronicled for the Clinton County Sheriff's Office the duration of the sexual abuse that . . . she suffered at the hands of the Defendant, which does include the scar to her breast, as well as anal intercourse, putting a B-B gun to her head, pulling her hair, threatening her life if she said anything, and that he had spanked her with a belt that left marks on her in the past. Those items the Court is satisfied constitute sadism as defined in the instructions to OV 7 . . . .

The parties also argued over the scoring of other OVs that are not relevant to this appeal, including OV 13, MCL 777.43 (continuing pattern of criminal behavior). The minimum sentence guidelines range was ultimately set at 108 to 180 months. See MCL 777.62. The trial court imposed a minimum sentence at the very top end of the guidelines range, 180 months (15 years), with the maximum sentence being set at 40 years' imprisonment. Defendant filed a delayed application for leave to appeal, challenging the scoring of OV 7 and OV 13. Defendant argued that OV 7 was improperly assessed at 50 points, given that the trial court considered conduct related to past sexual abuse, instead of limiting its examination to conduct directly pertaining to the sexual assault on February 24, 2013, which was the sentencing offense. This Court denied the application, *People v Thompson*, unpublished order of the Court of Appeals, entered December 3, 2013 (Docket No. 318128), and defendant then filed an application for leave to appeal with the Michigan Supreme

---

[2] We note that the victim was 13 years old on February 24, 2013, having turned 13 in December 2012. During most of the period in which the sexual abuse allegedly occurred, she was under the age of 13, and had defendant been convicted of CSC I as to an act of penetration taking place when the victim was less than 13 years old, defendant would have faced a mandatory minimum sentence of 25 years' imprisonment. See MCL 750.520b(2)(b).

[3] "Sadism" is statutorily defined as "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification." MCL 777.37(3).

Court. Our Supreme Court denied the application with respect to defendant's arguments concerning OV 13, but in regard to OV 7, the Court ruled:

> Pursuant to MCR 7.302(H)(1), in lieu of granting leave to appeal, we remand this case to the Court of Appeals for consideration, as on leave granted, of whether the conduct of the defendant with the victim prior to the commission of the sentencing offense may be considered when scoring Offense Variable 7, and if so, what evidence may support that scoring. MCL 777.37; *People v McGraw*, 484 Mich 120[; 771 NW2d 655] (2009). [*People v Thompson*, 497 Mich 945; 857 NW2d 21 (2014).]

Under the sentencing guidelines, a trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Hardy,* 494 Mich 430, 438; 835 NW2d 340 (2013); *People v Rhodes (On Remand)*, 305 Mich App 85, 88; 849 NW2d 417 (2014). " 'Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred.' " *People v Fawaz,* 299 Mich App 55, 60; 829 NW2d 259 (2012) (citation omitted). This Court reviews de novo "[w]hether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute . . . ." *Hardy,* 494 Mich at 438; see also *Rhodes*, 305 Mich App at 88. When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR. *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012).[4]

---

[4] We note that, if the appropriate score for OV 7 is zero points, the guidelines range would be 81 to 135 months. MCL 777.62. Defendant was given a minimum sentence of 180 months. When a defendant properly preserves a claim that a scoring error was made, and if a guidelines range is altered in any way because a scoring error was actually made by the sentencing court, remand for resentencing is ordinarily required, even when the minimum sentence falls within the altered guidelines range. *People v Francisco*, 474 Mich 82, 89-91; 711 NW2d 44 (2006). Here, while defendant challenged the trial court's scoring of OV 7, he did not challenge the assessment of 50 points on the ground that he now raises on appeal for the first time, so his current argument was not properly preserved. *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004). However, because, as held and explained below, the appropriate guidelines range is indeed 81 to 135 months, and because the 180-month minimum sentence actually imposed falls entirely outside of that range, defendant is permitted to seek appellate relief despite the lack of preservation. *Id.* at 312 ("Because defendant's sentence is outside the appropriate guidelines sentence range, his sentence is appealable under § 34[10], even though his attorney failed to raise the precise issue at sentencing, in a motion for resentencing, or in a motion to remand."). The *Kimble* Court explained that the plain-error test still had to be applied, but it easily found plain error that prejudiced the defendant and seriously affected the fairness, integrity, and public reputation of the judicial proceedings. *Id.* at 312-313. The Court stated that "[i]t is difficult to imagine what could affect the fairness, integrity and public reputation of judicial proceedings more than sending an individual to prison and depriving him of his liberty for a period longer than authorized by the law." *Id.* at 313. Here, considering that the 180-month minimum sentence is nearly four years longer than the top end of the appropriate guidelines range, i.e., the sentencing period authorized by law, the plain-error test is satisfied.

In the remand order, the Supreme Court directed our attention to its decision in *McGraw*, 484 Mich 120, wherein the Court stated and held:

> This case involves further analysis of the issue presented in *People v Sargent*[, 481 Mich 346; 750 NW2d 161 (2008)]. There we held that offense variable (OV) 9 [number of victims] in the sentencing guidelines cannot be scored using uncharged acts that did not occur during the same criminal transaction as the sentencing offense. Today we decide whether the offense variables should be scored solely on the basis of conduct occurring during the sentencing offense or also using conduct occurring afterward.
>
> We hold that a defendant's conduct after an offense is completed does not relate back to the sentencing offense for purposes of scoring offense variables unless a variable specifically instructs otherwise. Therefore, in this case, defendant's flight from the police after breaking and entering a building was not a permissible basis for scoring OV 9. Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the circuit court for resentencing. [*McGraw*, 484 Mich at 121-122 (citations omitted).]

In *McGraw*, the defendant had pleaded guilty to multiple counts of breaking and entering a building in exchange for the dismissal of other charges, including fleeing and eluding police officers. *Id.* at 122-123. As part of the Court's reasoning in support of its holding, it observed:

> We conclude that the Court of Appeals erred by considering the entire criminal transaction and using defendant's conduct after the crime was completed as the basis for scoring OV 9. Offense variables must be scored giving consideration to the sentencing offense alone, unless otherwise provided in the particular variable. OV 9 does not provide for consideration of conduct after completion of the sentencing offense. Therefore, it must be scored in this case solely on the basis of defendant's conduct during the breaking and entering. If the prosecution had wanted defendant to be punished for fleeing and eluding, it should not have dismissed the fleeing and eluding charge. It would be fundamentally unfair to allow the prosecution to drop the fleeing and eluding charge while brokering a plea bargain, then resurrect it at sentencing in another form. [*Id.* at 133-134 (citation omitted).]

At the conclusion of its opinion, the *McGraw* Court reiterated that "[o]ffense variables are properly scored by reference only to the sentencing offense except when the language of a particular offense variable statute specifically provides otherwise." *Id.* at 135.

Once again, MCL 777.37(1)(a) calls for a score of 50 points when "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered *during the offense*." (Emphasis added.) Defendant seizes on the language "during the offense" in arguing that a court can only take into consideration conduct occurring during the sentencing offense for purposes of scoring OV 7. It does appear that the "during the offense" language found in OV 7 modifies all of the preceding language in MCL 777.37(1)(a), thereby requiring us to focus solely on conduct occurring during the CSC I offense. Regardless, even if OV 7 did not contain language that expressly limits consideration to conduct occurring during the sentencing offense in relationship to sadism, OV 7 certainly does not specifically provide

that a sentencing court can look outside the sentencing offense to past criminal conduct in scoring OV 7. Therefore, under *McGraw* and *Sargent*, the trial court here was only permitted to consider conduct occurring during the criminal offense on February 24, 2013, for purposes of scoring OV 7.

It is clear that the trial court assessed 50 points for OV 7 upon contemplation of conduct engaged in by defendant throughout the two-year course of the sexual abuse, instead of confining its examination to conduct occurring during the sexual assault on February 24, 2013, which was the only criminal offense to which defendant pled no contest. Defendant's conduct that allegedly took place before the sexual assault on February 24, 2013, regardless of its deplorability, did not relate forward to the sentencing offense; the prosecution, in brokering the plea bargain, had chosen to dismiss charges related to the alleged numerous criminal offenses of sexual assault occurring before February 24, 2013. The record is such that it is impossible to discern whether one or more, or none, of the horrific acts relied on by the trial court in scoring OV 7 predicated on sadism took place on February 24, 2013. Thus, we cannot conclude that a preponderance of the evidence supported the 50-point score.[5]

We find it necessary to respond to some of the criticisms voiced by the dissent. The central theme of the dissent is that the Supreme Court in *McGraw* and *Sargent* rejected a narrow approach that would only allow contemplation of conduct occurring during the sentencing offense in the scoring of a variable, instead opting in favor of a broader approach allowing consideration of conduct simply "relating" or "pertaining" to the sentencing offense, which would not necessarily preclude, despite chronological distinctions, examining prior conduct or offenses. In *McGraw*, 484 Mich at 124, the Court noted that the defendant was arguing for an approach in which "only conduct occurring during the offense of which the defendant was convicted may be considered." On the other hand, the prosecution argued that a transactional approach should be used, examining "a continuum of the defendant's conduct . . ., which can extend far beyond the acts that satisfy the elements of the sentencing offense." *Id.* The *McGraw* Court then observed that in *Sargent*, "[w]e stated that usually 'only conduct relating to the offense may be taken into consideration when

---

[5] We note that the trial court assessed 50 points for OV 7 solely on the basis of sadistic behavior, not on the basis of torture or that defendant's conduct was designed to substantially increase the victim's fear and anxiety. It would not be appropriate for this Court to consider whether defendant's conduct was designed to substantially increase the victim's fear and anxiety. See *Anspaugh v Imlay Twp*, 480 Mich 964 (2007) (vacating this Court's judgment because the panel "engaged in appellate fact-finding"). "A *trial court* determines the sentencing variables by reference to the record[,]" *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008) (emphasis added), not this Court. See *People v Burns*, 494 Mich 104, 109-110 n 10; 832 NW2d 738 (2013) (recognizing that fact-finding authority is vested in the trial courts, which cannot be invaded by the Court of Appeals). Although we acknowledge the "right result – wrong reason" doctrine cited by our dissenting colleague, which would seemingly indicate a conclusion that sadism was an improper or wrong reason to assess OV 7 at 50 points, we do not believe that the doctrine can be employed to allow impermissible appellate fact-finding. Regardless, the record is equally lacking in providing evidence that defendant's conduct solely in relation to the offense that occurred on February 24, 2013, to which defendant pleaded guilty, was designed to substantially increase the victim's fear and anxiety.

scoring the offense variables.' " *McGraw*, 484 Mich at 124, quoting *Sargent*, 481 Mich at 349 (quotation marks omitted). The dissent here emphasizes this language, treating it as a rejection of the *McGraw* defendant's argument that only conduct occurring during the sentencing offense may be considered. The fact is, however, that the Court was agreeing with the defendant's position and rejecting the prosecutor's transactional-approach argument. It is abundantly clear that, when read in context, the Supreme Court's reference to conduct "relating" to the sentencing offense meant that consideration was limited to conduct occurring during the sentencing offense. The dissent improperly construes the use of the term "relating" as opening the door to contemplation of prior and subsequent conduct going beyond the sentencing offense.

The *Sargent* Court stated, "That the general rule is that the relevant factors are those relating to the offense being scored is further supported by the fact that the statutes for some offense variables specifically provide otherwise." *Sargent*, 481 Mich at 349. In applying this rule, the Court held:

> [W]hen scoring OV 9, only people placed in danger of injury or loss of life when the sentencing offense was committed (or, at the most, during the same criminal transaction) should be considered.
>
> In the instant case, the jury convicted defendant only of sexually abusing the 13–year–old complainant. It did not convict him of sexually abusing the complainant's sister. Furthermore, the abuse of the complainant's sister did not arise out of the same transaction as the abuse of the complainant. For these reasons, zero points should have been assessed for OV 9. [*Id.* at 350-351.]

Accordingly, the Court was clearly limiting the examination to conduct and events occurring during the sentencing offense. Indeed, the *McGraw* Court interpreted *Sargent* in just such a manner, stating that in *Sargent* "we held that offense variable (OV) 9 in the sentencing guidelines cannot be scored using uncharged acts that *did not occur during the same criminal transaction as the sentencing offense*." *McGraw*, 484 Mich at 121-122 (emphasis added). Speaking of *Sargent* later in its opinion, the *McGraw* Court noted that "it was clear that the defendant's conduct [in *Sargent*] did not occur during the same criminal transaction." *Id.* at 126 n 17.

Furthermore, independent of *Sargent*, the Court in *McGraw* characterized its ruling as "decid[ing] whether the offense variables should be scored solely on the basis of conduct occurring during the sentencing offense or also using conduct occurring afterward." *Id.* at 122. As quoted earlier, the *McGraw* Court specifically held that "a defendant's conduct after an offense is completed *does not relate back* to the sentencing offense for purposes of scoring offense variables unless a variable specifically instructs otherwise." *Id.* (emphasis added). Contrary to the principle in this plain language, the dissent here is concluding that prior conduct can relate forward to the sentencing offense. The *McGraw* Court rejected the argument "that the Legislature intended sentencing courts to consider a defendant's entire criminal transaction when scoring the variables." *Id.* at 128. And it concluded "that the Court of Appeals erred by considering the entire criminal transaction and using defendant's conduct after the crime was completed as the basis for scoring OV 9." *Id.* at 133. The Court emphasized that the sentencing variable at issue "must be scored . . . solely on the basis of defendant's conduct *during* the breaking and entering." *Id.* at 134 (emphasis added). In the case at bar, the dissent is effectively arguing in favor of a transactional or multi-

transactional approach, examining the full history of sexually-assaultive conduct committed by defendant against the victim in previous criminal transactions, despite falling beyond the conduct that occurred during the sentencing offense. *McGraw* and *Sargent* do not allow for such an approach. Furthermore, outside the framework of *McGraw* and *Sargent*, MCL 777.37(1)(a) expressly limits the sentencing court to consideration of whether a victim was treated with sadism "during the offense."

The dissent, citing *McGraw*, 484 Mich at 129, states that "[t]he holding in *McGraw* was not that conduct that occurred at a different time from the sentencing offense could *never* be considered when scoring guidelines for that offense, but rather that any such conduct must *pertain to* the sentencing offense unless the offense variable specifies otherwise." We have closely reviewed page 129 of the *McGraw* opinion and find no support whatsoever for this proposition, and we stand by the quoted materials from *McGraw* referenced earlier in this opinion and our interpretation thereof. In *McGraw*, 484 Mich at 129, the Court did observe:

> This does not mean that transactional conduct may never influence a defendant's sentence. Such a result would frustrate the Legislature's intention of having the guidelines promote uniformity in sentencing. Nothing precludes the sentencing court from considering transactional conduct when deciding what sentence to impose within the appropriate guidelines range and whether to depart from the guidelines recommendation.

We are not holding that defendant's conduct occurring before the sentencing offense was committed cannot be considered in a sentencing departure or in imposing defendant's minimum sentence within the guidelines range. Indeed, the trial court may have sentenced defendant at the very top end of the guidelines range precisely because of the history of sexual abuse. This passage from *McGraw* simply does not suggest that a court may consider pre-offense conduct that merely "pertains" to the sentencing offense in scoring a variable, such as OV 7, that is limited to contemplation of conduct occurring during the sentencing offense.[6]

The dissent suggests that *McGraw* is distinguishable because it dealt with post-offense conduct and not pre-offense conduct. It is clear to us, however, that the analytical framework constructed by our Supreme Court in *McGraw* applies regardless of whether a court is addressing conduct occurring before or after the sentencing offense; the touchstone is that the conduct to be considered in scoring the variable must have occurred during the commission of the sentencing offense.

Finally, the dissent, relying on research and data concerning ongoing sexual abuse of children, makes an impassioned plea regarding the necessary interrelationship or interconnection between the sentencing offense and the prior acts of sexual abuse, precluding examination of the

---

[6] The *McGraw* Court would not even allow consideration of conduct amounting to fleeing and eluding that occurred directly following the completion of the sentencing offense. *McGraw*, 484 Mich at 131-135. We thus find it plain that taking into consideration conduct occurring on different days over a two-year period certainly could not survive scrutiny under *McGraw*.

sentencing offense in a vacuum. We do not disagree with the dissent's information regarding the victims of child sexual abuse and their abusers, nor do we reject the dissent's general theory about abusive relationships; rather, we merely disagree that such matters are relevant under *McGraw* and *Sargent* for purposes of scoring OV 7 in this case. We note that despite the fact that OV 7 does not allow consideration of the full history of acts of sexual abuse, OV 13 was assessed at 50 points, the highest score possible, because the sentencing offense "was part of a pattern of felonious criminal activity involving 3 or more sexual penetrations against a person or persons less than 13 years of age." MCL 777.43(1)(a). OV 13 requires consideration of "all crimes within a 5-year period, including the sentencing offense, . . . regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). Thus, defendant's past alleged sexual abuse of the victim is relevant and has a bearing on his sentence.

We have pondered the proposition that assessing 50 points under MCL 777.37(1)(a) is perhaps proper on the basis that the act of digital-vaginal penetration occurring on February 24, 2013, has to be examined in context by taking into account the entire history of abuse, i.e., the sexual penetration, in and of itself, was a sadistic act given everything else defendant had allegedly done to the victim. However, such an analysis necessitates consideration of pre-offense conduct for which defendant did not plead guilty or no-contest and that simply is not permissible under MCL 777.37(1)(a), *Sargent*, and *McGraw*.

Reversed and remanded for resentencing. We do not retain jurisdiction.


/s/ William B. Murphy
/s/ Deborah A. Servitto