COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOSEPH GABRIAL MAUTI,

        Defendant-Appellant.

UNPUBLISHED
November 29, 2018

No. 337958
Oakland Circuit Court
LC No. 2016-257974-FC

Before: O'BRIEN, P.J., and TUKEL and LETICA, JJ.

PER CURIAM.

A jury convicted defendant, Joseph Gabrial Mauti, of second-degree murder, MCL 750.317, and killing or torturing an animal, MCL 750.50b. The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to prison terms of 60 to 100 years for the murder conviction and 34 months to 8 years for the killing or torturing an animal conviction, to be served concurrently. Defendant appeals as of right. We affirm.

Defendant killed his wife and the family dog. At the time, defendant was on probation as the result of an earlier domestic violence conviction involving an assault on his wife. Shortly before the murder, Mrs. Mauti had left, taking the children with her. That day, however, the children were spending the night with their father. Unbeknownst to Mrs. Mauti, defendant had screwed the front door into the door jamb and disabled the garage door opener. Although defendant claimed that he expected Mrs. Mauti to leave, as was her routine, she put their two children to bed. Upon her return downstairs, defendant, who had retrieved a baseball bat from the basement, savagely bludgeoned her, causing her death. He likewise pummeled their dog until she too was dead. Defendant attempted to clean up the bloody scene, moving his wife's body to the garage and discarding the dog in a trash bag. The next day, Mrs. Mauti's concerned coworkers eventually contacted the police after she failed to show up for work. Although the police determined young children were inside the Mauti home, no one would answer the door. Upon seeing blood inside and given their knowledge about the earlier domestic violence against Mrs. Mauti, the police forcibly entered. They found defendant sitting on a couch in the family room with his children. Defendant later gave a statement to the police in which he admitted killing his wife and the dog by striking them multiple times with a baseball bat. The prosecution charged defendant with first-degree premeditated murder, MCL 750.316(1)(a). At trial, the defense conceded defendant was guilty of second-degree murder, but argued that the killing was

-1-

not premeditated. Consistent with the defense theory, the jury convicted defendant of second-degree murder.

In his sole issue on appeal, defendant challenges the reasonableness of the trial court's sentence of 60 to 100 years for his conviction of second-degree murder. The sentence represents an upward departure of just over 13 years from the applicable sentencing guidelines range of 225 to 562 months for a third-offense habitual offender. MCL 777.61; MCL 777.21(3).

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). When reviewing a departure sentence for reasonableness, we must determine "whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017); see also *People v Dixon-Bey*, 321 Mich App 490, 521; 909 NW2d 458 (2017).[1]

Although the sentencing guidelines are only advisory, *Lockridge*, 498 Mich at 365, "the guidelines remain a highly relevant consideration in a trial court's exercise of sentencing discretion that trial courts must consult and take . . . into account when sentencing." *Steanhouse*, 500 Mich at 474-475, quoting *Lockridge*, 498 Mich at 391 (quotation marks omitted). Departures from the minimum sentencing guidelines "are appropriate where the guidelines do not adequately account for important factors legitimately considered at sentencing." *Milbourn*, 435 Mich at 657. Thus, this Court must compare the stated reasons for exceeding the guidelines with the scored offense variables (OVs) and prior record variables (PRVs) to determine whether those reasons were already accounted for in the guidelines. "[T]he key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Steanhouse*, 500 Mich at 475, quoting *Milbourn*, 435 Mich at 661 (quotation marks omitted). Many factors may be relevant to the proportionality standard including, but not limited to:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Walden*, 319 Mich App 344, 352-353; 901 NW2d 142 (2017) (citation omitted).]

---

[1] We acknowledge our Supreme Court has ordered briefing and argument in part to address "to what extent the sentencing guidelines should be considered to determine whether the trial court abused its discretion in applying the principle of proportionality under" *Steanhouse*. *People v Dixon-Bey*, 501 Mich 1066; 910 NW2d 303 (2018). At present, we are bound by our Court's published opinion. See MCR 7.215(J)(1) ("A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990 . . . .").

If the appellate court "determines that [the] trial court has abused its discretion in applying the principle of proportionality by failing to provide adequate reasons for the extent of the departure sentence imposed, it must remand to the trial court for resentencing." *Steanhouse*, 500 Mich at 476.

As noted by defendant, the trial court referred to three factors it relied upon in determining that the departure sentence was reasonable and proportionate: defendant's lack of remorse, the impact of the crime on his children, and the brutal nature of the crime.[2] Defendant argues that the first factor was a clearly erroneous, subjective determination. He also argues that the second and third factors were taken into account by the guidelines, and the trial court failed to justify why these factors were given inadequate weight as scored. We agree in part, and disagree in part.

With respect to the first of these factors, a defendant's apparent lack of remorse is not considered by the guidelines, and this Court has previously held that such a finding can provide support for a trial court's decision to depart from the guidelines range. *Walden*, 319 Mich App at 352-353. At the sentencing proceeding, the trial court stated that having observed defendant's (video recorded) statement and demeanor at trial, it "never saw any remorse . . . [or] any emotion of any kind." In his police statement, defendant made numerous derogatory statements about his wife, and, although he also expressed regret throughout the interview, it is evident that the trial court did not believe that defendant felt genuine remorse. On appeal, defendant emphasizes an apology letter that he read to the court during his allocution at sentencing. Clearly, the trial court was not persuaded by the statement of apology, which even defendant described as a "small apology letter." The trial court was in the best position to make a determination as to the credibility of defendant's professed remorse and we will not disturb that finding on appeal. See *People v Thompson*, 314 Mich App 703, 720; 887 NW2d 650 (2016).

With respect to the second factor, the children's maternal grandmother informed the court at sentencing that the couple's seven-year-old son "has extreme anger and aggression towards others," requires medication and weekly "trauma therapy, psychiatric evaluations and counseling." Moreover, their three-year-old daughter has "night terror dreams" and "scream[s] out about blood [being] all over her." OV 5, MCL 777.35, was scored to reflect the psychological impact of the offense on the family. Defendant was assessed 15 points because "[s]erious psychological injury requiring professional treatment occurred to a victim's family."

---

[2] In making his argument, defendant also claims that his prior domestic violence conviction was taken into account by PRV 5, MCL 777.55. Although the sentencing court stated that it was aware of defendant's prior domestic violence conviction, it was unaware of defendant's felony resisting and obstructing convictions, MCL 750.81d, and a larceny (retail-fraud third, MCL 750.356d(4)) matter dismissed under the Holmes Youthful Trainee Act, MCL 762.11 *et. seq*. Although the felony convictions formed the basis for defendant's habitual offender status, they were not scored under the guidelines because of the 10-year gap rule, MCL 777.50. Defendant's discharge date was February 3, 2004, and his misdemeanor domestic violence occurred on April 1, 2014.

MCL 777.35(1)(a). The trial court provided a detailed explanation concerning the overwhelming impact the crime had on defendant's children. The court was troubled by "how the children were left right out of the equation," and observed that the children would have to live the remainder of their lives with the knowledge that their father murdered their mother. The court further explained,

> You know, children blame themselves for things and they could be wondering later in life, "Am I going to turn out like my dad?" you know. "Have I got that inside me?" So the impact on the children is enormous and he didn't do anything to safeguard them from this and I understand [the eldest child], you know, saw some of the images from this.[3] That's what's most disturbing to me.

While OV 5 takes into account the psychological harm that can result from the loss of a loved one, it treats all "serious psychological injury requiring professional treatment" the same. We find no error in the trial court's belief that the devastation suffered by the couple's young children as a result of losing one parent at the hands of the other—particularly when one of the children came into the room and saw Mrs. Mauti's body first-hand—was not adequately considered by the maximum 15-point score available under OV 5.

Turning to the remaining factor discussed by the trial court, the trial court described the murder as "up-close and personal, face to face, brutal and bloody," and noted that the photographs presented by the prosecution depicted images the court would "never forget." Defendant was assessed 50 points under OV 7, MCL 777.37, because the "victim was treated with sadism, torture, or excessive brutality . . . ."[4] MCL 777.37(1)(a). Although the trial court stated that "the nature of the murder . . . is something that guidelines don't take into account," unlike its articulation regarding the impact of the crime on the couple's children, it is unclear from the court's explanation why it believed inadequate weight was given to this variable. Therefore, to the extent that the trial court relied on this consideration without establishing that the 50 points assessed for OV 7 were inadequate based upon the circumstances of the offense, it erred by doing so. *Dixon-Bey*, 321 Mich App at 526-527.

In *People v Steanhouse (On Remand)*, 322 Mich App 233, 242-243; 911 NW2d 253 (2017), this Court remanded a case for resentencing where some, but not all, of the trial court's reasons for imposing a departure sentence involved inappropriate considerations, and it was

---

[3] After being arrested, defendant told the police that his young son came downstairs and "flipped out" when he saw his bloodied and battered mother. He yelled at defendant and vomited.

[4] On the date of the crimes in this case, OV 7 required a score of 50 points if "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense[.]" MCL 777.37(1)(a), as amended by 2002 PA 137. Effective January 5, 2016, MCL 777.37(1)(a) was amended by 2015 PA 137 to require a 50-point score if "[a] victim was treated with sadism, torture, excessive brutality or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense[.]"

"unclear whether the court would have departed solely on the basis" of the single, proper factor it articulated at sentencing. We find this case distinguishable because we do not believe that the trial court's reference to a factor considered under the guidelines without explaining its reason for doing so played a significant role in its determination of an appropriate sentence. The trial court repeatedly emphasized that the most vital aspect of its rationale for imposing a minimum sentence of 60 years' imprisonment was the uncommonly extreme impact that the crime had, and will continue to have, upon the couple's children. Indeed, directly before announcing the departure sentence, the trial court concluded its explanation by saying, "The Court is going to impose a sentence that it believes is reasonable and proportionate with the crime *and certainly with the impact on the family and children into the future*." (Emphasis added.) We infer from this statement that the court would have imposed the same departure sentence, even if it had not considered "the nature of the murder" in determining the 60-year minimum sentence.[5] Furthermore, we conclude that the trial court's articulation of its reason for imposing the departure sentence was sufficient and "appropriately directed to proportionality principles, and that the reasonableness of the departure sentence imposed was more than supported by the record."[6] *Walden*, 319 Mich App at 355.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Jonathan Tukel
/s/ Anica Letica

---

[5] Defendant raises the additional argument that the trial court erred when it "scoffed at the idea" of considering his mental illness as a reason to impose a lower sentence. This argument is based on the fact that the trial court questioned why defense counsel belatedly brought up the subject of mental illness at sentencing, as opposed to trial. However, after the trial court's interjection and query, defense counsel explained that it was inappropriate to raise the matter at trial because defendant did not pursue an insanity defense, but that the court "can consider everything" at sentencing. The trial court responded, "Right," which indicates that the court agreed that this factor could be considered when determining an appropriate sentence. The fact that the trial court was not persuaded by the argument, or did not impose a lesser sentence based on this proposed mitigating factor, is not a ground for resentencing.

[6] Defendant ends his brief by arguing that his minimum sentence violates his Sixth Amendment right to a jury trial because the sentence imposed "nullifies [or later "virtually nullifies"] the jury's" not guilty verdict on the first-degree murder charge. This constitutional question was not raised below and, therefore, is reviewed for plain error. *People v Carines*, 460 Mich 750, 763-764, 597 NW2d 130 (1999). The penalty for an adult convicted of first-degree premeditated murder is life without parole. MCL 750.316(1) and MCL 791.234(6). A defendant convicted of second-degree murder is parole eligible after serving the minimum sentence imposed by the court. MCL 791.233b(n). Because our current sentencing laws allow for the possibility that a defendant may not actually be paroled, *People v Merriweather*, 447 Mich 799, 808-811; 527 NW2d 460 (1994), defendant's argument is without merit.