*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
July 22, 2021

v

DONALD PIERRE JETT,

Defendant-Appellant.

No. 353516
Gogebic Circuit Court
LC No. 2019-000041-FH

Before: BORRELLO, P.J., and SERVITTO and STEPHENS, JJ.

PER CURIAM.

Defendant pleaded guilty to possession of methamphetamine with intent to deliver, MCL 333.7401(2)(b)(*i*). He was sentenced, as a second-offense habitual offender, MCL 769.10(1)(a), to serve 87 months to 30 years' imprisonment. Defendant appeals by delayed leave granted,[1] challenging the scoring of offense variables (OVs) 12 and 14.[2] For the reasons set forth in this opinion, we affirm in part, reverse in part and remand for resentencing.

## I. BACKGROUND

Defendant's presentence investigation report (PSIR) indicated that on February 8, 2019 and February 9, 2019, under the direction of law enforcement, a confidential informant (CI) bought methamphetamine from defendant at his residence. Defendant testified at his plea hearing that on

---

[1] *People v Jett*, unpublished order of the Court of Appeals, entered September 3, 2020 (Docket No. 353516).

[2] In a Standard 4 brief, defendant raises additional arguments that we decline to address because they are outside the scope of this appeal. See *Jett*, unpub order (limiting the scope of appeal to the two issues raised in the application filed by counsel on defendant's behalf and rejecting, for lack of merit, the issues presented in defendant's initial Standard 4 brief, which he again presents in a newly filed Standard 4 brief).

February 9, 2019, he sold Jeremiah Quick[3] approximately three grams of methamphetamine at his residence. On February 12, 2019, a search warrant was authorized for defendant's residence, and police officers found numerous items, including two acetaminophen and hydrocodone bitartrate pills,[4] a white crystalline substance that tested positive for methamphetamine, and suboxone.

On July 24, 2019, defendant pleaded guilty to possession with intent to deliver methamphetamine. He also admitted his status as a second-offense habitual offender. In exchange for defendant's plea, the prosecutor agreed to dismiss the remaining four charges and not to pursue the fourth-offense habitual offender notice. Additionally, the prosecutor agreed to recommend a minimum sentence "that is equal to the bottom score of the sentencing guidelines." The prosecutor explained, "And to clarify for everyone's benefit, if the guidelines were to say 50 to 150, our recommendation for the minimum term would be the 50."

On March 11, 2020, defendant moved for correction of an invalid sentence, in which he challenged the scoring of OV 12 and OV 14. At the April 21, 2020 hearing on his motion, defendant argued that he "clean[ed] up" the dates at the plea proceeding. Defendant argued that while the PSIR indicated that multiple people were involved in the "transactions," there was no evidence showed that defendant was "the guiding hand."

The trial court concluded that OV 12 was properly assessed 10 points stating:

[T]he People correctly point out that . . . Mr. Jett was convicted of Count 1 of the felony information, which is a charge of possession with intent to deliver methamphetamine, and then he was also charged, as a result of the raid on his house on February 12th, with the possession of Vicodin, the possession of Suboxone, being in proximity to a park, and maintaining a drug house. All four of those counts, Counts 2, 3, 4, and 5, occurred as a result of the search of his residence, which also revealed the possession of methamphetamine, coupled with the statements made by Mr. Jett during his plea that he delivered methamphetamine previously to a controlled informant – or a confidential informant; in fact, had made two sales to the confidential informant. There is an indication, and there is ample evidence by a preponderance of the evidence standard to find, that this offense of possession with intent to commit [sic], methamphetamine, was committed by Mr. Jett on February 12th of 2019, and at the time that he also possessed the methamphetamine he possessed Vicodin, Suboxone, was in close proximity to the park and maintained a drug house. So those four felonies, which were dismissed as a part of the plea agreement do clearly constitute contemporaneous felonious

---

[3] There is no direct evidence that Quick was the CI. However, at sentencing, defendant stated: "Jeremiah Quick is the CI in this case. Everyone knows that[.]"

[4] Vicodin is a brand of acetaminophen and hydrocodone bitartrate. Michigan Medicine, Acetaminophen and Hydrocodone <https://www.uofmhealth.org/health-library/d03428a1> (accessed May 6, 2021).

criminal acts, as they occurred within 24 hours, as it all occurred within the same raid on Mr. Jett's house on February 12th[.]

The trial court also maintained its belief that 10 points should be assessed for OV 14:

It is clear from a review of those facts [in the PSIR] that Mr. Jett was a leader in this transaction. There's a description in the facts. Just to name a few examples, where he drove the confidential informant to someone else's house and sold methamphetamine to a Martin Stein. There are also descriptions of buying heroin from a Phil Jaeger. There's also statements from Missy Sharrow indicating that Mr. Jett would give her prescription – illegal prescription medications. There's Mr. Jett's confession that he was buying large amounts of methamphetamine. Also, he indicated that he was selling heroin to a few people. So the presentence investigation report provides more than a preponderance of evidence that Mr. Jett was a leader in the distribution of drugs within this community; that is, he procured them, he transported them, and he delivered them on multiple occasions, to multiple people. That, therefore, qualifies him as a leader in this case.

Accordingly, the trial court denied defendant's motion. This appeal ensued.

II. ANALYSIS

On appeal, defendant contends that the trial court erred by assessing 10 points for OV 12 and 10 points for OV 14.

A trial court's factual findings in scoring the sentencing guidelines are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Clear error exists when this Court is left with a definite and firm conviction that an error occurred. *People v Thompson*, 314 Mich App 703, 708; 887 NW2d 650 (2016). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

We review de novo whether the trial court's interpretation and application of the legislative sentencing guidelines was proper. *People v Sours*, 315 Mich App 346, 348; 890 NW2d 401 (2016). A court may consider "all record evidence, including the contents of a PSIR, plea admissions, and testimony presented at a preliminary examination," when calculating the sentencing guidelines. *Id*.

A. OV 12

OV 12 addresses contemporaneous felonious criminal acts. MCL 777.42(1). 10 points are assessed for OV 12 when "[t]hree or more contemporaneous felonious criminal acts involving other crimes were committed . . . ." MCL 777.42(1)(c). Five points are assessed for OV 12 when "[t]wo contemporaneous felonious criminal acts involving other crimes were committed . . . ." MCL 777.42(1)(e). One point is assessed for OV 12 when "[o]ne contemporaneous felonious criminal act involving any other crime was committed . . . ." MCL 777.42(1)(f). Zero points are

assessed for OV 12 when "[n]o contemporaneous felonious criminal acts were committed . . . ." MCL 777.42(1)(g). A felonious criminal act is contemporaneous if it occurred within 24 hours of the sentencing offense and "has not and will not result in a separate conviction." MCL 777.42(2)(a)(*i*); MCL 777.42(2)(a)(*ii*).

In this case, the sentencing offense was count one, possession of methamphetamine with intent to deliver. Defendant was also charged with count two, possession of less than 25 grams of Vicodin; count three, possession of suboxone; count four, possession of less than 25 grams of a mixture containing methamphetamine and Vicodin in or within 1,000 feet of a park; and count five, maintaining a drug house.

While defendant appears to argue that count two was a sentencing offense, and that there were only two contemporaneous felonious acts with respect to count two, count two was not the sentencing offense because it was dismissed. It is therefore irrelevant whether there were any contemporaneous felonious acts with respect to count two. See MCL 777.42(2)(a)(*i*).

Nevertheless, although defendant incorrectly labeled the sentencing offense, his assertion that count one occurred on February 9, 2019, and did not occur within 24 hours of any of the other offenses raises the issue of whether there was sufficient evidence to assess 10 points for OV 12. The judgment of sentence indicates that all of the offenses occurred on February 12, 2019. However, at his plea hearing, defendant testified that he sold Quick methamphetamine on February 9. Although there was evidence in the PSIR that defendant also possessed methamphetamine on February 12, he pleaded guilty to having possessed methamphetamine with intent to deliver *on February 9*. To be contemporaneous felonious criminal acts, counts two, three, four, and five— the acts that the trial court considered to have been contemporaneous felonious acts—must have occurred within 24 hours of February 9. See MCL 777.42(2)(a)(*i*).

From the record presented to us,[5] we glean no record evidence that counts two, three, or four occurred within 24 hours of February 9. Defendant's PSIR indicates that police officers found Vicodin and suboxone on February 12. It also indicates that Missy Sharrow told police officers that she received Vicodin from defendant "on multiple occasions," and that the confidential informant told police that defendant "has had multiple controlled substance [sic] in his residence, including methamphetamine, marijuana, cocaine, base cocaine, heroin, fentanyl and suboxone." Neither Sharrow nor the CI stated that defendant possessed Vicodin or suboxone within 24 hours of February 9. Similarly, there is no evidence that defendant possessed less than 25 grams of a mixture containing methamphetamine and Vicodin within 24 hours of February 9. Although there was evidence in the PSIR that defendant sold methamphetamine to the CI on February 8, the PSIR did not state that the methamphetamine also contained Vicodin. Accordingly, on the record presented to us, we conclude that counts two, three, and four were not contemporaneous felonious acts because there was no evidence that those acts occurred within 24 hours of February 9. See MCL 777.42(2)(a)(*i*).

---

[5] We note that the prosecutor did not file a response to defendant's application for leave to appeal or file a responsive pleading of any nature in this appeal.

However, our review of the record does reveal legally sufficient evidence that count five occurred within 24 hours of February 9. Under MCL 333.7405(1)(d), a person may not "[k]nowingly keep or maintain a . . . dwelling . . . that is used for keeping or selling controlled substances in violation of this article." Defendant testified that he sold Quick methamphetamine at his residence on February 9. His PSIR also indicated that he sold methamphetamine to the CI on February 8. There was sufficient evidence that count five occurred within 24 hours of the sentencing offense because defendant used his house to sell methamphetamine on February 8 and 9. Defendant argues that count five was actually a misdemeanor because it was designated as a misdemeanor in his PSIR and in the statute. This Court has used the Code of Criminal Procedure to define a "felony" for the purposes of the sentencing guidelines. *People v Carlson*, 332 Mich App 663, 671; 958 NW2d 278 (2020). The Code of Criminal Procedure defines a felony as "a violation of a penal law of this state for which the offender, upon conviction, may be punished *by imprisonment for more than 1 year* or an offense expressly designated by law to be a felony." MCL 761.1(f) (emphasis added). A person who maintains a drug house is "guilty of a misdemeanor, punishable by imprisonment for not more than 2 years . . . ." MCL 333.7406. Although maintaining a drug house is designated as a misdemeanor, it is a felony for the purposes of OV 12 because an individual who maintains a drug house may be punished by imprisonment for more than one year. See *Carlson*, Mich App at 671; "[b]ecause CSC-IV is punishable by up to two years of imprisonment, the Mount Pleasant incident was felonious criminal activity for purposes of scoring the criminal sentencing guidelines..." Here, the trial court should have assessed only one point for OV 12 because only count five was a contemporaneous felonious criminal act. See MCL 777.42(1)(f).

Changing the score of OV 12 to one point means that defendant is entitled to resentencing because the subtraction of nine points for OV 12 lowers defendant's guidelines minimum range. See *People v Francisco*, 474 Mich 82, 92; 711 NW2d 44 (2006).

B. OV 14

As previously stated, defendant also argues that the trial court erred by scoring 10 points for OV 14.

OV 14 addresses the offender's role in the offense. MCL 777.44(1). 10 points are assessed for OV 14 when "[t]he offender was a leader in a multiple offender situation . . . ." MCL 777.44(1)(a). Zero points are assessed for OV 14 when "[t]he offender was not a leader in a multiple offender situation . . . ." MCL 777.44(1)(b). MCL 777.44 does not define "multiple offender situation" or "leader." See MCL 777.44. This Court has defined "multiple offender situation" as "a situation consisting of more than one person violating the law while part of a group." *People v Jones*, 299 Mich App 284, 287; 829 NW2d 350 (2013), vacated in part on other grounds 494 Mich 880 (2013). An offender is a person who violated the law. *Id*. A "leader" is a person "who is a 'guiding or directing head' of a group." *Id*. (citation omitted).

Offense variables are to be scored by reference only to the sentencing offense except for when the language of an offense variable statutes provides otherwise. *People v McGraw*, 484 Mich 120, 135; 771 NW2d 655 (2009). MCL 777.42(2)(a) provides otherwise. *Id*. at 127. It provides that a trial court, in scoring OV 14, is to consider the "entire criminal transaction." MCL 777.44(2)(a).

-5-

Here, defendant argues that there was insufficient evidence that he was a leader in a multiple offender situation because there was no evidence that any of the parties worked together to accomplish the drug sales. In order to score 10 points for OV 14, there had to be evidence that defendant guided or directed a group. See *Rhodes*, 305 Mich App at 90. While the trial court focused much of its attention on the quantity on drugs defendant was engaged in purchasing and selling, it did make a finding that defendant was working with others to sell drugs. The record supports the trial court's finding. Following his arrest, defendant told police officers that he bought methamphetamine from Melinda Brunelle, and that he "might have done some middleman stuff . . . ." Defendant stated also that he went on runs with "the Jaegers," and that he would negotiate to obtain extra grams of heroin. As the trial court pointed out, Quick stated that he drove with defendant to meet Marty Stein, and saw defendant sell methamphetamine to Stein.

Defendant also argues that there was no evidence that he sold drugs to was anyone but a customer. However, there was evidence that defendant guided others. Quick stated that defendant handed him methamphetamine in a smoking device and *told him* "to use." Defendant stated that he would set things up when he went on runs with "the Jaegers." In addition, there was evidence that defendant procured the methamphetamine from Brunelle, possessed it for a period of time, transported it to his residence, and delivered it to Quick and others, which is evidence of leadership. See *People v Dickinson*, 321 Mich App 1, 23; 909 NW2d 24 (2017) (concluding that the trial court properly assessed 10 points for OV 14 because the defendant procured heroin, possessed it for a period of time, transported it to a prison, and delivered it to a prisoner). Defendant's PSIR also indicated that he admitted that he got pounds of weed from "the Jaegers" and sold that weed. Defendant also admitted that he got approximately 9 to 10 grams of methamphetamine and sold it to Quick and small amounts to a few other individuals. Sharrow stated that she received controlled substances from defendant, and that she saw communications on defendant's phone about heroin, methamphetamine, crack cocaine, ecstasy, and suboxone transactions. The CI similarly stated that defendant had multiple controlled substances in his residence. Quick stated that he drove with defendant to meet Marty Stein and saw defendant sell Stein methamphetamine. He also provided a list of nine people who received or bought drugs from defendant. Under these circumstances, a preponderance of evidence proved that defendant was a "leader" as that terms as been defined, in drug sales in the community. Accordingly, the trial court did not clearly err in scoring 10 points for OV 14.

We affirm the trial court's rulings on OV 14, we reverse the trial court's rulings on OV 12 and remand to the trial court for resentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens