*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JEFFREY TRAVIS TOENSFELDT,

        Defendant-Appellant.

UNPUBLISHED
October 12, 2023

No. 360991
Oscoda Circuit Court
LC No. 17-001523-FC

Before: LETICA, P.J., and HOOD and MALDONADO, JJ.

PER CURIAM.

Defendant appeals by right a 2022 amended judgment of sentence. In December 2018, a jury convicted defendant of four counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) and (2)(b) (sexual penetration of a person under 13 by a person 17 or over); three counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) and (2)(b) (sexual contact with a person under 13 by a person 17 or over); and gross indecency, MCL 750.338b.[1] The present appeal involves a 2022 resentencing during which the trial court, applying a third-offense habitual offender enhancement pursuant to MCL 769.11, sentenced defendant to concurrent prison terms of 427 months to 75 years for two of the CSC-I convictions, 337 months to 75 years for the other two CSC-I convictions, 129 months to 30 years for the CSC-II convictions, and 25 to 120 months for the gross indecency conviction. We affirm.

## I. BACKGROUND AND PROCEDURAL HISTORY

This is the second time that defendant's case has appeared before this Court, and the basic facts of this case were summarized by this Court in the first appeal:

> Defendant's convictions arose from the repeated sexual assault of his daughter, HM, when she was approximately three to seven years old. HM testified

---

[1] Defendant was also convicted of indecent exposure, MCL 750.335a, but he has already served the sentence for this offense and it is not at issue on appeal.

about penile-vaginal penetration, penile-anal penetration, and bruising on her thighs caused by defendant's penis. MO, a family friend, provided graphic testimony of seeing HM with a swollen and bloody vagina and anus after returning from a visitation with defendant when HM was four years old. HM's mother, MK, testified that she first learned of the abuse in 2011, that Child Protective Services (CPS) did not help her at that time, and that HM spoke about the abuse again in March of 2013 or 2014, immediately before MK moved to Florida. HM lived with defendant from March until June, while MK was in Florida. MK retrieved HM from defendant's house in June of 2013 or 2014 and moved her to Florida, and MK reported the offenses after she and HM moved back to Michigan in 2016. The evidence of defendant's sexual abuse of HM was buttressed by evidence that defendant had (1) sexually penetrated, with his penis, another girl, TL, when she was six or seven years old; (2) sexually assaulted another of his daughters, IT, when she was less than two years old; and (3) displayed pornography prominently in his home in the presence of HM. Defendant testified at trial and claimed that the allegations against him had been fabricated because of a custody dispute with HM's mother. [*People v Toensfeldt*, unpublished per curiam opinion of the Court of Appeals, issued October 15, 2020 (Docket No. 347705) (*Toensfeldt I*), pp 1-2.]

The trial court originally sentenced defendant to eight concurrent terms of 47½ to 75 years' imprisonment for the eight felony convictions. Defendant appealed, and this Court affirmed defendant's convictions and sentences. See *Id*. The Supreme Court vacated defendant's sentences on the basis of an issue that he had not raised in this Court in his first appeal. *People v Toensfeldt*, ___ Mich ___; 966 NW2d 355 (2021) (*Toensfeldt II*). The Supreme Court remanded this case to the trial court for resentencing on the basis of a newly raised issue, stating:

> As the prosecuting attorney concedes, the conduct giving rise to the instant case occurred before the entry of the defendant's 2016 conviction for possession of less than 25 grams of a controlled substance. Accordingly, the circuit court erred by treating the 2016 conviction as a prior conviction for purposes of applying the [fourth-offense] habitual offender enhancement, see MCL 769.12, and scoring Prior Record Variable 2, see MCL 777.52. [*Id*.]

Defendant now appeals from his resentencing, arguing that the trial court erroneously scored offense variables (OVs) 8, 10, and 11 and that the scoring errors require resentencing.

## II. DISCUSSION

Defendant argues that he is entitled to resentencing because the trial court erroneously scored OVs 8, 10, and 11. We disagree.

"Under the sentencing guidelines, a trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Thompson (On Remand)*, 314 Mich App 703, 708; 887 NW2d 650 (2016). Clear error occurs when this Court is left with a firm and definite conviction that an error has taken place. *Id*. This Court reviews de novo whether the facts as found were adequate to satisfy the statutory scoring conditions. *Id*. "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a

PSIR, plea admissions, and testimony presented at a preliminary examination." *People v McChester (On Remand)*, 310 Mich App 354, 358; 873 NW2d 646 (2015).

## A. OV 8

The trial court did not clearly err by finding that defendant asported HM to a location or situation of greater danger because she was taken to a place where it was easier for defendant to perpetrate the abuse and where HM did not feel leaving was safe. Therefore, the trial court did not err by assessing 15 points for OV 8.

The trial court assessed 15 points for OV 8 for the four counts of CSC-I. OV 8 "is victim asportation or captivity." MCL 777.38. It is appropriate to assess 15 points for OV 8 if "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense[.]" MCL 777.38(1)(a).

> A plain reading of asportation is this: If a victim is carried away or removed to another place of greater danger or to a situation of greater danger, the statutory language is satisfied. Nothing in the statute requires that the movement be greater than necessary to commit the sentencing offense, and we see no other basis for reading the statute as excluding the movement of a victim that is only incidental to that offense. [*People v Barrera*, 500 Mich 14, 21; 892 NW2d 789 (2017) (quotation marks and citation omitted).]

In *Barrera*, the Supreme Court concluded that a 15-point score for OV 8 was appropriate because the trial court could properly find from the evidence that the defendant moved the victim to a room where the assault was less likely to be observed by others. *Id*. at 22.

HM testified that at defendant's house on Cherry Creek Road in Mio, defendant's "bedroom" was usually the living room. There was also a chair and a computer in the living room. HM and her sisters slept in a different room. HM said that "sometimes at nighttime Jeff would take me and the girls out of our room, or we would just originally sleep with him, and he would do bad things to us." She said that defendant would move her from the "sleeping room where [she] slept" and "to his [defendant's] bed" in the living room. She also described instances in which defendant picked her up and moved her from her bedroom to his bed "maybe four times in a full week." HM said that when she was taken into defendant's bed, she was scared to try to go back to her own bedroom. HM also spoke of sometimes being moved by defendant from the chair in the living room to the bed. The PSIR states: "The victim testified in the preliminary hearing that the sexual assaults were taking place all the time. The victim eventually moved to sleeping in the chair to avoid the sexual abuse but that didn't stop the defendant as he would pick her up from the chair and move her to the bed." At the preliminary examination, HM testified that the sexual abuse always occurred at night and in defendant's bed. HM clearly testified about ongoing abuse that happened many times. As noted, HM testified that the sexual abuse would occur "a couple of times every couple of weeks" at defendant's house on Cherry Creek Road, and the prosecutor asked, "[D]id it happen the whole time you were living there?" HM answered, "Not necessarily," but then explained that no abuse occurred when she went to her grandmother's house while

defendant worked.  MK (HM's mother) testified that in 2013 or 2014, HM lived with defendant in the house on Cherry Creek Road from March until June, after which MK picked her up and took her to Florida.

It is clear from the record that the asportation element was satisfied because defendant repeatedly moved HM to his bed to perpetrate the abuse, so the only issue is whether HM was asported to a place or situation of greater danger.  See *Barrera*, 500 Mich at 21.  The evidence suggests that, to HM, defendant's bed was the most dangerous place in the world.  This is because defendant established his bed, whether it was set up in the living room or in the covered porch, as the place where he perpetrated abuse against HM.  HM knew that when she was in the bedroom she shared with her sisters that she was, at least for that moment, safe; however, when she was in defendant's bed she was in imminent danger because that is the place where the sexual abuse was always perpetrated.  Regardless of where HM was in the house when defendant decided to assault her, he always asported her to the bed before he began.

Moreover, there are also more objective bases for concluding that defendant's bed was a place of greater danger because moving HM there made it easier to commit his crimes.  There were times when defendant moved HM to the living room bed from the living room chair, and HM testified that he would lay her down either on her back or her stomach prior to penetrating either her vagina or anus; therefore, the court could reasonably conclude that moving HM to his bed placed her in greater danger because it would have been substantially more difficult to commit these acts with HM in the chair.  Furthermore, defendant had his computer set up in the living room and would play cartoons on the computer, and the court could reasonably have found that the distraction of these cartoons facilitated the abuse by rendering HM less likely to resist defendant's acts of violence.  Thus, the living room was more dangerous than the bedroom from which he moved HM.  Finally, HM testified that she could not leave defendant's bed to return to her bedroom after he abused her "because [she] was afraid that he's just going to hurt [her] if [she] did go back in to [her] room."  Therefore, by moving HM from her bedroom to defendant's bed, he put her in greater danger because she would then be in a location where she did not believe should could leave without being physically harmed by defendant.

For these reasons, the evidence supported the trial court's decision to assess 15 points for OV 8.

B.  OV 10

The trial court did not err by assessing 15 points for OV 10 because the evidence suggests that defendant engaged in preoffense conduct aimed at grooming and isolating HM, who was obviously a vulnerable victim given her youth.

The trial court assessed 15 points for OV 10 for all the felony counts.  OV 10 "is exploitation of a vulnerable victim."  MCL 777.40(1).  It is appropriate to assess 15 points for OV

10 if "[p]redatory conduct was involved." MCL 777.40(1)(a).[2] Predatory conduct, in the context of the present case, means "preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). " 'Vulnerability' means the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c).

In *People v Cannon*, 481 Mich 152, 161-162; 749 NW2d 257 (2008), the Supreme Court explained how OV 10 should be scored:

> To aid lower courts in determining whether 15 points are properly assessed under OV 10, we set forth the following analytical questions:
>
> (1) Did the offender engage in conduct before the commission of the offense?
>
> (2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?
>
> (3) Was victimization the offender's primary purpose for engaging in the preoffense conduct?
>
> If the court can answer all these questions affirmatively, then it may properly assess 15 points for OV 10 because the offender engaged in predatory conduct under MCL 777.40.

MK testified that when she wanted to move to Florida she had to attend a mediation with defendant, and he ended up "having [HM] for the rest of the school year." The sexual assaults, testified to by HM at trial, primarily occurred during defendant's temporary custody. Also, HM testified that, before the assaults started happening, she liked to visit with defendant for the following reasons:

> Because he always used to buy us like food from McDonalds. And he would always buy us toys that we wanted after his work. And, so then we got to play with them after. One time, I think it was him bought it [sic], but I remember a little kitchen set and a baby set that we got from, I think it was him. And a big huge stuffed bunny.

Given the horrifically frequent sexual abuse that occurred when HM was living with defendant and MK was in Florida, it is a reasonable inference that defendant engaged in the preoffense conduct of establishing a good relationship with HM and then sought sole temporary custody of HM for the purpose of exploiting his extremely young and obviously vulnerable daughter. A court may rely on reasonable inferences when scoring OVs. *People v Muniz*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 355977); slip op at 7. In addition,

---

[2] Various amendments to this statute since the offenses at issue in this case do not affect the language applicable to this appeal.

testimony established that, at one point, defendant got HM and her sister their favorite candy and allowed them to eat it while watching television and then sexually penetrated them while they cried and tried to focus their attention on the television instead of the abuse. This was another example of preoffense conduct directed at a susceptible victim for the purpose of victimization.

Given these circumstances, we see no basis for reversal in connection with the scoring of OV 10.

## C. OV 11

The trial court properly assessed 25 points for OV 11 because HM testified about an incident during which she was penetrated multiple times.

The trial court assessed 25 points[3] for OV 11 in connection with Count 4 (CSC-I, penile/vaginal). OV 11 "is criminal sexual penetration." MCL 777.41(1). It is appropriate to assess 25 points for OV 11 if "[o]ne criminal sexual penetration occurred[.]" MCL 777.41(1)(b).

All of the following apply to scoring offense variable 11:

(a) Score all sexual penetrations of the victim by the offender arising out of the sentencing offense.

(b) Multiple sexual penetrations of the victim by the offender extending beyond the sentencing offense may be scored in offense variables 12 or 13.

(c) Do not score points for the 1 penetration that forms the basis of a first- or third-degree criminal sexual conduct offense. [MCL 777.41(1).]

In *People v Lampe*, 327 Mich App 104, 118; 933 NW2d 314 (2019), this Court provided guidance for the scoring of OV 11:

[D]efendant argues that because he received two convictions for CSC-III, neither of the two penetrations resulting in conviction could be considered when assessing points for OV 11. However, this Court has repeatedly rejected this argument. In particular, this Court has concluded that OV 11 requires the trial court to exclude the [one penetration] forming the basis of the offense when the sentencing offense itself is first-degree or third-degree CSC. All other sexual penetrations arising from the sentencing offense, including penetrations resulting in separate CSC-I or CSC-III convictions, are properly considered *under OV 11*. [Quotation marks and citations omitted.]

Sexual penetrations occurring on different dates with nothing more than an incidental connection do not meet the "arising out of" language from MCL 777.41(2)(a). *People v Johnson*, 474 Mich 96, 101-102; 712 NW2d 703 (2006). For an assessment of points to be appropriate, there must be

---

[3] Defendant erroneously asserts in his brief that 50 points were assessed for OV 11.

evidence "that the penetrations resulted or sprang from each other or that there is more than an incidental connection between the two penetrations." *Id*. at 102. In other words, there must be evidence "that the penetrations arose out of each other." *Id*.

The following exchange that occurred during the preliminary examination established that there was a single instance during which multiple penetrations occurred:

> *Q*. So [HM], you said that he, you remember there was at least one time that he moved you from the chair and put you on the bed; right?
>
> *A*. Yes.
>
> *Q*. And you remember that *he put his private in both of your privates* when he did that?
>
> *A*. Yes.
>
>                     \*   \*   \*
>
> *Q*. Okay. And you remember that time *he put his private in both of your privates*?
>
> *A*. Yes.
>
> *Q*. And so that would be your, your pee private and your poop private; is that right?
>
> *A*. Yes. [Emphasis added.]

This testimony clearly refers to an instance in which defendant's penis penetrated HM's vagina and her anus during the course of a singular assault. Therefore, the trial court did not err by assessing 25 points for OV 11.[4]

Affirmed.

/s/ Anica Letica
/s/ Noah P. Hood
/s/ Allie Greenleaf Maldonado

---

[4] To the extent that defendant argues that he was denied the effective assistance of counsel because his defense counsel did not raise each of these objections in the trial court, this argument fails by virtue of the fact that OVs 8, 10, and 11 were properly scored. Defense counsel is not ineffective for failing to raise a futile objection. See *People v Goodin*, 257 Mich App 425, 433; 668 NW2d 392 (2003).