*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DANIEL SCOTT CARLSON,

Defendant-Appellant.

FOR PUBLICATION
June 25, 2020
9:05 a.m.

No. 344674
Mecosta Circuit Court
LC No. 17-009071-FH

Before: BORRELLO, P.J., and RONAYNE KRAUSE and RIORDAN, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(c) (penetration of a physically helpless person), and sentenced to 5 to 15 years of imprisonment. Defendant appeals by right, and challenges only his sentence. We affirm.

## I. FACTS

Defendant was a member of the State Bar of Michigan and was a manager of the Tullymore Resort in Mecosta County prior to his conviction in this matter. The victim, AA, knew defendant through her career in real estate and attended a Halloween party at the resort. In the hours after that party, defendant digitally penetrated the victim's vagina while she was so intoxicated that she could not speak, move, or feel.

## II. ANALYSIS

Defendant argues that offense variable (OV) 9, OV 10, and OV 13 were improperly scored, and that the trial court imposed an unreasonable and disproportionate sentence when it departed from the guidelines range. We disagree.

### A. STANDARDS OF REVIEW

"Under the sentencing guidelines, a trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Thompson (On Remand)*,

314 Mich App 703, 708; 887 NW2d 650 (2016). We review de novo whether the facts as found were adequate to satisfy the statutory scoring conditions. *Id*. A trial court's findings of fact are clearly erroneous if, after reviewing the entire record, we are definitely and firmly convinced that the trial court made a mistake. *People v Armstrong*, 305 Mich App 230, 237; 851 NW22d 856 (2014). A sentence departing from the guidelines range is reviewed for reasonableness. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the principle of proportionality set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017) (quotation marks and citation omitted).

## B. OFFENSE VARIABLE 10

Defendant first argues that the trial court improperly assessed 15 points for OV 10 because no predatory conduct was involved. We disagree.

MCL 777.40(1)(a) provides for a score of 15 points for OV 10 if "[p]redatory conduct was involved[.]"[1] "Predatory conduct" is defined as "preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). In *People v Cannon*, 481 Mich 152, 162; 749 NW2d 257 (2008), our Supreme Court set forth the following framework for determining whether 15 points should be assessed for OV 10:

> (1) Did the offender engage in conduct before the commission of the offense?

> (2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?

> (3) Was victimization the offender's primary purpose for engaging in the preoffense conduct?

There was ample evidence that AA was extremely intoxicated on the evening of the party, and as such, she had a "readily apparent susceptibility to injury[.]" *Id*. In addition, testimony indicated that defendant, late into the night, lingered around the condominium units where AA and her now-husband, JO, were staying.[2] This lingering was preoffense conduct. *Id*. And a reasonable

---

[1] MCL 777.40 was amended by 2018 PA 652, effective March 28, 2019. The amendment does not affect the language at issue here.

[2] Multiple witnesses testified that defendant had engaged in similar late-night "lingering" during an all-women's golf outing that took pace at the resort earlier in the month.

Additionally, defendant's other actions and conduct that evening are indicative of predation. AA testified that defendant said that he would let her and her friends stay in a Tullymore

inference from the summary of JO's interview in the presentence-investigation report (PSIR) is that defendant was looking at AA in the shower, naked, before the assault. See *People v McChester (On Remand)*, 310 Mich App 354, 358; 873 NW2d 646 (2015) ("When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR, plea admissions, and testimony presented at a preliminary examination."); see also *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012), aff'd 495 Mich 33 (2014) ("The trial court may rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable."). This "naked gazing" was further preoffense conduct. A further reasonable inference from all the evidence as a whole was that victimization was defendant's primary purpose for engaging in the preoffense conduct. *Cannon*, 481 Mich at 162. Thus, all the *Cannon* factors were satisfied.

In *People v Huston*, 489 Mich 451, 461-462; 802 NW2d 261 (2011), the Court stated that predatory conduct for purposes of OV 10 involves a creation or enhancement of vulnerability and involves something more than "run-of-the-mill planning," such as lying in wait or stalking. Evidence indicated that defendant was, in practical effect, "lying in wait" to target a drunken woman—either AA or her friend, MF, who was staying upstairs from AA and JO and explained that defendant engaged in an inappropriate encounter with her while she was intoxicated and barely dressed.[3] This is analogous to the defendant in *Huston* who was hiding in a parking lot looking for someone to rob. *Id*. at 463. Accordingly, there is no basis for overturning the 15-point score for OV 10.

## C. OFFENSE VARIABLE 13

Defendant next argues that the trial court improperly scored 25 points for OV 13 because there was insufficient evidence of three crimes against a person to establish a pattern of felonious activity. We disagree.

OV 13 deals with a "continuing pattern of criminal behavior." MCL 777.43(1). MCL 777.43(1)(c) provides for a score of 25 points if "[t]he offense was part of a pattern of felonious

---

condominium for free. The PSIR stated that defendant had "a key to every door at Tullymore," and that defendant bought drinks for AA, JO, MF, and MF's husband (JF), which all four believed may have been drugged as they each became extremely and unusually inebriated. The PSIR indicated that AA, MF, and JF vomited that night, and all four complained of feeling like "zombies" the next day, even though they consumed no more alcohol than others at the party who were not in ill health the next morning. However, the trial court concluded that there was no evidence that defendant had actually drugged AA or any of her friends, and limited its analysis to defendant's other conduct of lingering in the condominium unit after he should have left and waiting for an opportunity to be alone with AA or MF.

[3] MF testified that she was very drunk, and was wearing only her underwear when she passed out in the upstairs bathroom. She awoke when defendant picked her up and tried to steer her toward a bedroom other than the bedroom MF was sharing with JF. Defendant let go of MF when JF woke up and told MF to come to bed. JF testified that MF had gotten sick that night, and he remembered seeing defendant by the bed while MF was in her underwear.

criminal activity involving 3 or more crimes against a person [.]" "[A]ll crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a).

The court assessed 25 points for OV 13, stating that there were additional pending charges against defendant and a sexual touching in Mount Pleasant for which defendant had not been charged. Defendant does not contest that there was sufficient evidence of two crimes against a person based on the offense against AA and based on charges filed in connection with another woman. Rather, defendant argues that the Mount Pleasant incident mentioned by the trial court, which did not result in any charges, could not properly be used to support the 25-point score.

This incident was described during a pretrial hearing regarding other-acts evidence. A woman, AV, testified that in 2016 or 2017, she encountered defendant at a nightclub in Mount Pleasant. She testified that she asked him about obtaining a job and that he intentionally touched her vagina over her jeans. AV said that she did not want the touching.

AV's testimony was adequate to show, at least by a preponderance of the evidence, that defendant committed fourth-degree criminal sexual conduct (CSC-IV) against her by engaging in sexual contact with her through the element of surprise. MCL 750.520e(1)(b)(*v*); MCL 750.520a(q). Defendant contends that even if a crime occurred against AV, it would only be a misdemeanor and not pertinent for the scoring of OV 13. It is true that MCL 750.520e(2) states that CSC-IV "is a misdemeanor punishable by imprisonment for not more than 2 years or a fine of not more than $500.00, or both." However, the sentencing guidelines are part of the Code of Criminal Procedure. MCL 761.1(f) defines "felony" for purposes of that act as "a violation of a penal law of this state for which the offender, upon conviction, may be punished by imprisonment for more than 1 year or an offense expressly designated by law to be a felony." As such, the trial court properly relied on the Mount Pleasant incident in scoring OV 13.[4]

### D. OFFENSE VARIABLE 9

Defendant next argues that the trial court improperly assessed 10 points for OV 9 because defendant did not place MF in danger of physical injury when he committed CSC-III against AA. We disagree.

MCL 777.39(1)(c) states, in pertinent part, that a score of 10 points is appropriate for OV 9 if "[t]here were 2 to 9 victims who were placed in danger of physical injury[.]" Each person who was placed in danger of physical injury is to be counted as a victim. MCL 777.39(2). At sentencing, defense counsel argued that at the time of the assault on AA, nobody else was present in the room and therefore nobody else was placed in danger of any injury. The trial court assessed 10 points for the variable, stating that MF was placed in danger of injury while in the bathroom vomiting.

---

[4] Defendant contends that the trial court did not find that the crime actually took place. However, that finding is implicit in the trial court's ruling.

In *People v Sargent*, 481 Mich 346, 350; 750 NW2d 161 (2008), the Supreme Court stated, "[W]hen scoring OV 9, only people placed in danger of injury or loss of life when the sentencing offense was committed (or, at the most, during the same criminal transaction) should be considered." As an example, the *Sargent* Court referred to a robbery during which "other individuals present at the scene of the robbery . . . were placed in danger of injury or loss of life." *Id*. at 350 n 2. The Court concluded that an additional sexual assault allegedly committed by the defendant did not lead to a conviction and "did not arise out of the same transaction as the abuse of the complainant" and that OV 9 should, therefore, have been scored at zero points. *Id*. at 351.

However, in *People v Waclawski (After Remand)*, 286 Mich App 634, 684; 780 NW2d 321 (2009), this Court upheld the assessment of 10 points for OV 9 by concluding that it was a reasonable inference from the testimony "that . . . other boys were sleeping [at the defendant's home] while [the] defendant was [sexually] assaulting his chosen victim." We stated that the record supported "the inference that at least two other victims were placed in danger of physical injury when the sentencing offenses were committed." *Id*. Here, MF was staying in the same condominium unit where the assault occurred and had an inappropriate encounter with defendant. Therefore, *Waclawski* supports the trial court's scoring for OV 9.

Defendant contends that the trial court only relied on MF's vomiting as the "injury" in scoring OV 9 and that this vomiting was entirely separate from the sexual assault of AA. The court referred to MF's vomiting and said that defendant was present in the bathroom while this was occurring. It appears the court's reasoning was that, given defendant's predatory predilection, his mere presence placed MF in danger as she was highly intoxicated.[5]

Moreover, even if the trial court incorrectly scored OV9, a deduction of the points assessed would not change defendant's guidelines range. Defendant received 65 OV points, placing him in cell A-V of the sentencing grid, and if the 10 points for OV 9 are deducted from defendant's OV total, he would remain in the same cell, with the same guidelines range of 24 to 40 months. MCL 777.63. As such, resentencing would not be required even if the court erred in scoring OV 9.

## E. REASONABLENESS OF SENTENCE

The guidelines produced a range for the minimum sentence of 24 to 40 months. The trial court imposed a sentence of 60 months to 15 years in prison, exceeding the guidelines range by 20 months.

Although the guidelines are merely advisory, they are highly relevant and must be considered at sentencing. *Steanhouse*, 500 Mich at 472-473. The key test in reviewing a sentence is whether the sentence is proportionate to the seriousness of the matter, not whether it departs

---

[5] In scoring OV 9, the trial court again declined to weigh any evidence that defendant had drugged AA and her three friends. Instead, the trial court based its score on MF's testimony that defendant was in the bathroom while she was vomiting. Defendant's presence while MF was highly intoxicated placed her in danger of physical injury given defendant's sexual assault of AA that night under similar circumstances.

from or adheres to the guidelines' recommended range. *Id*. at 474-475. The sentencing court must take into account the background of the offender and the nature of the offense. *People v Walden*, 319 Mich App 344, 352; 901 NW2d 142 (2017). In determining proportionality, a court is allowed to consider whether certain factors were not adequately encompassed by the guidelines or not encompassed by the guidelines at all. *Id*. at 352-353.

At sentencing, the court spoke of the many hours it had spent presiding over and reviewing the case. The court stated that defendant, given his educational background, "should've known better." It stated that defendant, in a recorded telephone call from jail, had referred to AA as " 'evil,' " and that defendant displayed "an arrogance[.]" The court said, "[Defendant] doesn't say anything about being remorseful. He says 'She is so evil.' " The court stated that defendant was sorry about what he did to his family but never said that he was sorry "for what happened in this case." The court stated, "So based on that, I do not believe that the guidelines adequately reflect an appropriate sentence in this case."

Defendant argues that his educational background and career as a lawyer made him less likely to reoffend and therefore was an improper reason for the court to depart from the guidelines range. But the court mentioned defendant's background in the context of stating that he "should've known better." We take this to mean that defendant, as a lawyer, had knowledge of the law and was knowledgeable of, and subject to, professional standards of conduct and care. Defendant argues that the trial court's reference to his background was not an "objective and verifiable" basis for departure. However, the prior requirement for "objective and verifiable" reasons for departing from the guidelines was tied to the requirement for "substantial and compelling" reasons for departure, see *People v Anderson*, 298 Mich App 178, 183; 825 NW2d 678 (2012), and courts are no longer required to articulate "substantial and compelling" reasons to impose a sentence above the advisory guidelines range, *Walden*, 319 Mich App at 351.

Defendant also argues that the court's reference to a lack of remorse was improper because defendant did express remorse. At sentencing, defendant's counsel said that defendant, while maintaining his innocence because he did "not believe that there was conduct in the way that the verdict defined," had "remorse that [AA's] life has had some disruption." Counsel said that defendant had "extreme remorse" for how any of his actions affected various people, including AA.

A sentencing court may not base a sentence, even in part, on a defendant's failure to admit guilt, *People v Dobek*, 274 Mich App 58, 104; 732 NW2d 546 (2007), but a lack of remorse can be considered at sentencing, *People v Houston*, 448 Mich 312, 323; 532 NW2d 598 (1995). To determine whether sentencing was improperly influenced by the defendant's failure to admit guilt, we focus on three factors: (1) the defendant's maintenance of innocence after conviction; (2) the judge's attempt to get the defendant to admit guilt; and (3) the appearance that had the defendant affirmatively admitted guilt, his sentence would not have been so severe. *Dobek*, 274 Mich App at 104.

It is true that defendant's attorney expressed remorse on behalf of defendant, but the trial court emphasized defendant's "arrogance" in calling AA evil even when he knew he was being recorded during a telephone call from jail. Thus, it was not clearly erroneous for the trial court to conclude that defendant was not remorseful about AA's situation, despite counsel's assertions to

the contrary.[6] While defendant maintained his innocence, there is no evidence that the trial court attempted to persuade defendant to admit guilt. There was no appearance that if defendant had admitted guilt, he would have received a lesser sentence, and reviewing the comments as a whole, it is clear that the trial court focused on the fact that defendant seemed to have no empathy toward AA.

Given that the departure was relatively small,[7] the trial court "adequately explain[ed] why" the sentence it imposed was "more proportionate than a different sentence within the guidelines would have been." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017). Defendant contends that the sentence was not proportionate to the circumstances surrounding the offense and the offender because the sexual assault and the offender were not among the worst for CSC-III cases in general. But defendant's minimum sentence is not exceptionally long, and defendant, a member of the bar, penetrated an extremely intoxicated woman and later referred to her as evil. The trial court did not abuse its discretion in imposing defendant's sentence.

### III. CONCLUSION

Defendant has not demonstrated that the trial court improperly scored OV 9, OV 10, and OV 13, or that the trial court imposed an unreasonable and disproportionate sentence when it departed from the guidelines range. Accordingly, we affirm.

/s/ Stephen L. Borrello
/s/ Michael J. Riordan

---

[6] The court emphasized that when defendant saw the PSIR, he did not express any remorse but instead referred to AA as evil.

[7] Defendant relies on the guidelines range that he believes was appropriate, i.e., 12 to 20 months, as opposed to the 24-to-40-month range which the trial court properly calculated to support his argument that his sentence is disproportionately long.