*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANTHONY SEAN FOCHTMAN,

        Defendant-Appellant.

UNPUBLISHED
April 25, 2024

No. 361450
Dickinson Circuit Court
LC No. 2021-006033-FC

Before: M. J. KELLY, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

Defendant appeals as of right his convictions by a jury of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1) (multiple variables),[1] and unlawful imprisonment, MCL 750.349b. The jury acquitted defendant of an additional count of CSC-I. The trial court sentenced defendant to concurrent terms of 15 to 40 years' imprisonment for CSC-I and 10 to 15 years' imprisonment for unlawful imprisonment. We affirm.

The convictions arose from a series of actions spanning the nights of August 28 and 29 of 2021, which were a Saturday and Sunday night. The prosecutor presented evidence that defendant and the victim, CP, had been in a friendly and flirtatious relationship but that, from Saturday night through to Sunday night, he held her against her will in her apartment, used scissors as a weapon, and aggressively sexually assaulted her. The defense theory was that CP had consented to "rough" sex with defendant within the legal boundaries of sadomasochistic sex. The jury concluded that defendant committed unlawful imprisonment and that he committed CSC-I on Sunday, but it acquitted defendant for the alleged Saturday assault.

---

[1] The CSC-I charge was based on (1) sexual penetration occurring while defendant was armed with a weapon, (2) sexual penetration accomplished by force or coercion and resulting in injury, or (3) sexual penetration occurring under circumstances also involving the felony of unlawful imprisonment. See MCL 750.520b(1).

# I. SADOMASOCHISM DEFENSE

Defendant first contends that his trial attorney provided ineffective assistance because he did not look into obtaining an expert on sadomasochistic sex in order to learn more about sadomasochism and possibly present the expert at trial.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law. A judge must first find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). A court's findings of fact are reviewed for clear error, and questions of constitutional law are reviewed de novo. *Id*.

To obtain relief on the basis of ineffective assistance of counsel, a party "must show that counsel's performance fell short of [an] . . . objective standard of reasonableness and that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the . . . trial would have been different." *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015) (quotation marks, citation, and brackets omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citation omitted).

In connection with his motion for a new trial, defendant filed an affidavit from Susan Wright with the National Coalition for Sexual Freedom. Wright stated that she helps to connect people facing legal trouble with experts in sadomasochism. However, Wright also stated that she had been in contact with defendant's mother, and asked that defendant give his attorney permission to speak with her and received that permission on March 24, 2022. The trial, however, ended on March 16, 2022. Accordingly, the affidavit is not of much value. Defendant also attached an affidavit from Russell Stambaugh, who holds a PhD in psychology and specializes in sadomasochism, and who averred that he could inform people and testify about sadomasochistic sex and associated stigmas.

We conclude that defendant, in his arguments about sadomasochism, has not established ineffective assistance of counsel or demonstrated that the trial court erred in denying his request for a *Ginther* hearing.[2]

Defense counsel asked during voir dire if anyone had a problem with people being "engaged in alternative forms of kinky sex, so to speak." It is obvious that he was trying to establish rapport with the jurors because he then asked, "You're probably blushing, but—[s]orry. Does anyone think that just 'cause someone engages in S-and-M or a rougher type of sex, that they're guilty of a crime?" Later during voir dire, he spoke repeatedly of "alternative forms of sex acts" and "S-and-M." In opening statements, he said that "the scissors were part of the S-and-M rough sex that the parties had planned to engage in." Counsel then engaged in an extremely

---

[2] Defendant filed a motion for remand in this Court in connection with his ineffective-assistance argument. See *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). This Court denied the motion but stated that the denial was "without prejudice to a case call panel of this Court determining that remand is necessary once the case is submitted on a session calendar." *People v Fochtman*, unpublished order of the Court of Appeals, entered June 21, 2023 (Docket No. 361450).

thorough cross-examination of CP in which he got her to admit to having had a close relationship with defendant, to some inconsistencies in her retelling of events, and to having sent an explicit photograph to defendant. Counsel asked CP whether she had "generally discussed rough sex and S-and-M with" defendant, and she replied, "Yes." She agreed that safe words are "used . . . in" sadomasochism. He persistently pursued the idea that CP had consented to having sex with defendant. Also, defendant, by way of his recorded interview that was played to the jury, set forth the idea that CP had wanted to engage in rough sex and that a safe word had been discussed.

Defense counsel was toeing a fine line between conveying the defense of consent while maintaining good rapport with the jurors. As aptly stated by the trial court, using an expert in sadomasochism may have alienated the jurors, seeing as they came from (according to the trial court) a conservative community. We conclude that defense counsel acted within standards of reasonableness by vigorously pursuing his defense of consent but not going into too much detail regarding the intricacies of sadomasochism. *Ackley*, 497 Mich at 389. The strategy appears to have partially worked, in that the jurors acquitted defendant of CSC-I in connection with the alleged Saturday assault.[3]

Defendant contends that an expert could have contextualized the purported shame felt by CP and thus helped to persuade the jury that she was falsely accusing defendant of rape. But the "shame" concept was adequately pursued by defense counsel when he insinuated that CP felt ashamed of having sex with defendant very soon after splitting with her apparent boyfriend. Defendant also argues that in *People v Propp*, 508 Mich 374; 976 NW2d 1 (2021), the Court ruled that the defendant had a due-process right to an expert on autoerotic asphyxiation. The Court did not do so, however; it remanded the case for this Court to analyze whether a state-funded autoerotic-asphyxiation expert should have been allowed. *Id*. at 379-383. On remand, we concluded that such an expert was not necessary and stated, in part, that "although the practice of erotic asphyxiation may have been unfamiliar—or entirely unknown—to certain jurors, the essence of the defense was not so technical or complex that testimony from an expert would have been particularly helpful to the defense or the jury." *People v Propp (On Remand)*, 340 Mich App 652, 660; 987 NW2d 888 (2022), lv app pending. Such is the case here. Neither a reversal nor a remand is warranted.

## II. EXPLICIT PHOTOGRAPH OF VICTIM

Defendant contends that his attorney acted below objective standards of reasonableness by not publishing an explicit photograph of CP to the jury, which had been admitted into evidence.

"Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases. There is accordingly a strong

---

[3] Defendant contends that the trial court erroneously focused on whether defendant was deprived of a "substantial defense," see *People v Jurewicz*, 506 Mich 914 (2020), but the upshot of the trial court's analysis, despite any mention of a "substantial defense," was that defendant did not meet this applicable standard for relief, i.e., that the attorney would not have been deficient.

presumption of effective assistance of counsel." *People v Unger (On Remand)*, 278 Mich App 210, 242; 749 NW2d 272 (2008) (citation omitted). This Court "will not substitute [its] judgment for that of counsel on matters of trial strategy . . . ." *Id*. at 242-243.

As background to this issue, during trial defense counsel confronted CP with a photograph from defendant's telephone, which she admitted depicted her unclothed. The photograph was admitted into evidence. Counsel then spoke about the photograph in closing arguments:

> The sexually explicit photograph: I didn't want to—I didn't want to do that. I have daughters. I don't—I don't want to embarrass somebody. I'm not—[b]ut I have a duty, an obligation, to defend Mr. Fochtman to the fullest. I gave [CP] every opportunity to say, "Yeah, I might've sent a nude photograph or a sexually explicit photograph," and to be perfectly honest, if she would've said, "Yes, I did," I would've never brought that up. I didn't publish it to the jury. You have every right to take a look at it if you want. I didn't publish it to the jury. I'm not about embarrassing somebody, but I have an obligation, and the truth needs to come out. That sexually explicit photograph, characterize it as you wish: that's not something that you send to friends. That's not something that, when she said, "Well, we used to—[w]e would talk about sexual acts in general"—it's not. That photograph is another example of the abundance of consent in this matter.

Counsel was again toeing a line between establishing rapport with the jury and advancing his theory on consent. The photograph shows CP in a very explicit pose, and counsel made his point without possibly alienating the jurors. In addition, he made sure that the jurors *could* view the photograph if they felt it was important to their deliberations. No deficient performance is apparent. *Ackley*, 497 Mich at 389.

III. UNANIMITY INSTRUCTION

Defendant contends that a specific unanimity instruction was required for the charge of unlawful imprisonment, that a plain error occurred in connection with its absence,[4] and that his attorney rendered ineffective assistance by failing to request one.

MCL 750.349b states, in part:

---

[4] This Court reviews unpreserved issues for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Under the plain-error doctrine, reversal is warranted if a "clear or obvious" error occurred that "affected the outcome of the lower court proceedings." *Id*. And even if this standard is satisfied,

> an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*Id*. at 763-764 (quotation marks, citation, and brackets omitted).]

(1) A person commits the crime of unlawful imprisonment if he or she knowingly restrains another person under any of the following circumstances:

(a) The person is restrained by means of a weapon or dangerous instrument.

* * *

(c) The person was restrained to facilitate the commission of another felony or to facilitate flight after commission of another felony.

The jury was instructed in accordance with these subdivisions.

In *People v Chelmicki*, 305 Mich App 58, 65; 850 NW2d 612 (2014), the defendant was charged with unlawful imprisonment under the same theories at issue here (subdivisions (a) and (c)). He argued that a unanimity instruction was required to ensure that the jurors agreed on whether subdivision (a) or (c) had been proven. *Id*. at 67. This Court ruled:

In this case, defendant was charged with one count of unlawful imprisonment, which expressly provides alternative theories under which a defendant may be convicted. The alternative theories each relate to a single element of the offense, and are merely different ways of establishing that element. Accordingly, defendant was properly convicted of unlawful imprisonment even if some jurors believed he restrained the victim by means of a weapon, and the rest of the jurors believed he restrained the victim in order to facilitate the commission of the felony of arson (preparation to burn). No specific unanimity instruction was required, and it necessarily follows that defendant's claim of ineffective assistance of counsel must fail because defense counsel is not required to make a meritless request or objection. [*Id*. at 68-69.]

*Chelmicki* is binding law, see MCR 7.215(J)(1); was issued after the primary case discussed by defendant (*People v Cooks*, 446 Mich 503; 521 NW2d 275 (1994)); and disposes of defendant's argument. Defendant contends that the prosecutor never advanced to the jury what the unlawful imprisonment consisted of or when it occurred, but in opening arguments the prosecutor stated that defendant had unlawfully imprisoned CP from Saturday into Sunday and had assaulted her in two separate incidents during the unlawful imprisonment. Accordingly, contrary to defendant's argument that separate actus rei were at issue, the prosecutor alleged a single ongoing act of unlawful imprisonment.

IV. OV 7

Defendant's final argument is that the trial court should not have assessed 50 points for offense variable (OV) 7 on the basis of sadism.

"Under the sentencing guidelines, a trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Thompson (On Remand)*, 314 Mich App 703, 708; 887 NW2d 650 (2016). Clear error occurs when this Court is left with a firm and definite conviction that an error has taken place. *Id*. This Court reviews de novo whether the facts as found were adequate to satisfy the statutory scoring conditions. *Id*.

MCL 777.37(1)(a) states, in pertinent part, that 50 points are to be assessed for OV 7 if a "victim was treated with sadism, torture, excessive brutality or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense[.]" MCL 777.37(3) states, "As used in this section, 'sadism' means conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification."

Defendant contends that no sadism took place. The first problem with defendant's argument is that the trial court did not rely exclusively on sadism in scoring OV 7. The court stated that it was "satisfied that the victim was, therefore, treated with sadism, torture, excessive brutality, or similarly egregious conduct that was in fact designed to substantially increase the fear and anxiety that the victim suffered during the offenses." Defendant does not make an argument regarding how the conduct failed to satisfy the other parts of the pertinent statute. Failure to brief an issue constitutes abandonment of it. See *People v McGraw*, 484 Mich 120, 131 n 36; 771 NW2d 655 (2009).

In any event, there was sufficient evidence of sadism. CP testified that, on Sunday, defendant pulled down her shorts "aggressively" and "pinned [her] down" on her stomach. She said that defendant "[c]ontinuously penetrated" her, that it was "[v]ery similar" to what had happened the prior night, and that she managed to get away from him "only once" on Sunday night. She said: "He held me in place more. He was more aggressive with how he pinned me down, but—and once I got away, he was more aggressive with when [sic] he got back on top of me." She estimated that the Sunday assault lasted 45 minutes to an hour. CP said that defendant had a pair of scissors and threatened her with them. She said he held them close to her neck "a lot" and used them "down [her] back." The actions left red marks on her skin. CP testified that she was "terrified," thought that she was going to be killed, and did not fight back "as much" because she did not want to "make it worse." She said that "it hurt."

The actions described by CP subjected her to prolonged pain or humiliation—she described the assault lasting for up to an hour and described getting away from defendant once—and a reasonable inference is that they were undertaken for defendant's gratification. Defendant contends that he could not have acted sadistically because he believed that he was engaging in consensual sex. But the jury evidently believed CP's version of the events on Sunday and, therefore, believed that she had not, in fact, given defendant consent to sexually penetrate her. Defendant contends that the jury must have believed that defendant and CP had a safe word and were engaging in consensual sadomasochism because it acquitted defendant in connection with the Saturday events. But juries are allowed to be lenient and irrational. *People v Vaughn*, 409 Mich 463, 465-466; 295 NW2d 354 (1980). "[T]he mercy-dispensing power of the jury may serve to release a defendant from some of the consequences of his act without absolving him of all responsibility." *Id*. at 466. The bottom line is that the jury concluded that defendant committed CSC-I on Sunday and there is adequate evidence in the record for a finding of sadism.

Defendants contends that the trial court erroneously considered unlawful imprisonment and the acquitted conduct from Saturday in scoring OV 7 and failed to focus solely on the sentencing offense of CSC-I (from Sunday). See *People v Brown*, 339 Mich App 411, 419; 984 NW2d 486 (2021) (acquitted conduct not to be used in scoring OVs), and *People v Rodriguez*, 327 Mich App 573, 578; 935 NW2d 51 (2019) (OV 7 must be scored in connection with specific offense being

-6-

scored).  The court justified its mention of the Saturday events by stating that the unlawful imprisonment might have spanned both Saturday and Sunday.  Importantly, however, the court said that the scoring of OV 7 was appropriate even if it restricted its "consideration" to the events on Sunday alone.  And it mentioned the unlawful imprisonment in connection with how it impacted the sentencing offense of CSC-I (from Sunday).  The events on Sunday as described by CP were adequate to support the score.

Affirmed.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Christopher M. Murray